**Edward E. ERCEGOVICH,
Plaintiff–Appellant,**

v.

**GOODYEAR TIRE & RUBBER
COMPANY, Defendant–
Appellee.**

No. 97–3431.

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1998.

Decided Aug. 31, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 19, 1998.

Joseph W. Diemert, Jr. (argued and briefed), Laura J. Gentilcore, Joseph W. Diemert, Jr. & Associates, Cleveland, OH, for Plaintiff–Appellant.

James D. Kurek (briefed), Vincent J. Tersigni (argued and briefed), Buckingham, Doolittle & Burroughs, Akron, OH, for Defendant–Appellee.

Before: JONES, MOORE, and COLE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

The plaintiff-appellant, Edward Ercegovich, was formerly employed by the defendant-appellee, the Goodyear Tire & Rubber Company ("Goodyear"), as the Quality Systems Coordinator in Human Resources Development, Retail Sales Division. Ercegovich claims that he is the victim of employment discrimination, alleging 1) that Goodyear eliminated his position because of his age, and 2) then refused to offer him the opportunity to transfer to other positions within the corporation because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") as amended, 29 U.S.C. § 623(a), and Ohio's age-discrimination laws, OHIO REV.CODE ANN. § 4101.17, *recodified as* § 4112.14 (Banks–Baldwin West 1994 & Supp. 1998). The district court granted Goodyear's motion for summary judgment after concluding that Ercegovich failed to present evidence satisfying his prima facie burden, and in the alternative failed to show that Goodyear's explanation for eliminating his position was pretextual. Although we agree that Ercegovich failed to produce sufficient evidence of pretext with respect to his first claim challenging the reason for the elimination of his position, the district court erred in determining that Ercegovich failed to establish a prima facie case with respect to his second age-discrimination claim. After reviewing Ercegovich's evidence of pretext, we conclude that there is a genuine issue of material fact on which reasonable jurors could differ with respect to whether Goodyear discriminated against Ercegovich on the basis of age by reassigning younger employees to new positions without affording Ercegovich the same opportunity. Accordingly, we affirm in part and reverse in part and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Edward Ercegovich was born on October 15, 1937. He began working for Goodyear in 1962, and continued in Goodyear's employment until his dismissal in 1994. At the time of his firing, Ercegovich, then age fifty-seven, served as a Quality Systems Coordinator in Human Resources Development, Retail Sales Division in Akron, Ohio. Ercegovich was responsible for the training of retail managers throughout the country for the purpose of improving customer service. Ercegovich reported to Kim Lauritzen, Manager of Human Resources Development, who in turn reported to Paul Evert, Manager of Human Resources. Evert reported to Vice President Ed Gallagher, who oversaw the entire Retail Sales Division. J.A. at 503 (Pl.'s Ex. 2).

In 1994, Goodyear allegedly determined that improvements in customer service could

be best achieved by reassigning responsibility for the training of retail store managers from Ercegovich to district managers. Goodyear claims that the decision to eliminate Ercegovich's position was made by Evert and Lauritzen, although Ercegovich believes Vice President Gallagher also had some input into the decision. On October 28, 1994, Ercegovich was informed of his termination by Lauritzen and Bob Morris, Personnel Manager. Ercegovich then met with Cathy Smith, Human Resources Consultant, who offered him the choice of either retirement or recallable layoff status. Rather than elect recallable layoff status and face the possibility of losing his medical benefits if not recalled within six months, Ercegovich elected to retire so that he could receive his full pension and medical benefits. Although Goodyear claims that it searched for other positions within the company for which Ercegovich was qualified and that other positions were available to him in Washington, D.C. and Detroit, Ercegovich claims that Lauritzen and Morris advised him that no alternative positions were available to him, J.A. at 406–07 (Ercegovich Dep.), and that Smith never discussed with him the possibility of transferring to another position within the company. J.A. at 402 (Ercegovich Dep.). Goodyear disputes Ercegovich's version of events and claims Ercegovich informed Smith that he was unwilling to relocate from Akron. *See* Def.-Appellee's Br. at 14, 28–29.

As part of the continued reorganization of Human Resources Development, Goodyear eliminated two other positions in April of 1995—Manager of Human Resources and Personnel Development Specialist. J.A. at 378 (Attachment M—Movement of Associates); 686, 697–98 (Lauritzen Dep.). After the elimination of his position as Manager of Human Resources, Paul Evert, age forty, received a transfer to another position within the Retail Sales Division. J.A. at 378 (Attachment M—Movement of Associates). Karen Cohn, who was hired two weeks prior to the elimination of Ercegovich's position, J.A. at 70–71 (Ercegovich Dep.), was transferred to the position of Personnel Administrator after the elimination of her position as Personnel Development Specialist. J.A. at 378 (Attachment M—Movement of Associ-

ates). Cohn was twenty-eight years old at the time. *See id.*

On December 27, 1994, Ercegovich filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On October 13, 1995, the EEOC issued to the Ercegovich a right to sue notice. Ercegovich then filed suit in federal court, raising claims under the ADEA, 29 U.S.C. § 623(a), and Ohio's age-discrimination laws. OHIO REV. CODE ANN. § 4101.17, *recodified as* § 4112.14. The district court granted Goodyear's motion for summary judgment on the ground that Ercegovich failed to establish a prima facie case of age discrimination. Alternatively, the district court held that even if Ercegovich established a prima facie case, he failed to show that Goodyear's proffered explanation for the elimination of his position was pretextual. This appeal followed.

The district court had jurisdiction over the plaintiff-appellant's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the plaintiff-appellant's state claims under 28 U.S.C. § 1367. We have appellate jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

## II. FEDERAL AGE DISCRIMINATION CLAIMS

We review de novo the district court's grant of summary judgment. *See McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 372 (6th Cir.1997). Summary judgment is appropriate when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. We must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *See LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993). If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Ercegovich's complaint raises two related but separate claims of age discrimination.

First, Ercegovich claims that the decision to eliminate his position was motivated not by economic reasons, but by age bias. J.A. at 8 (Compl.¶¶ 9, 13). Second, Ercegovich claims that in contrast to his younger counterparts whose positions also were terminated as part of the reorganization, Goodyear did not offer him the opportunity to transfer to other positions in the company for which he was qualified, and its failure to do so was due to age bias. J.A. at 8 (Compl.¶¶ 10, 13).[1] We hold that although the district court properly granted Goodyear's motion for summary judgment with respect to Ercegovich's first claim of age discrimination, the district court improperly granted summary judgment to Goodyear on Ercegovich's second claim.

## A. Elimination of Ercegovich's Position

■ The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Where the plaintiff fails to present direct evidence of discrimination, the courts analyze ADEA cases under the three-step *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Initially, the plaintiff must present evidence sufficient to establish a prima facie case of age discrimination. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). Once a plaintiff satisfies his or her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *See id.* If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination. *See id.*

■ Where the employer eliminates an employee's position pursuant to a reduction in force or a reorganization, the employee

establishes a prima facie case of age discrimination when he or she shows (1) that he or she was forty-years old or older at the time of his or her dismissal; (2) that he or she was qualified for the position; (3) that he or she was discharged; and (4) "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). A plaintiff satisfies the fourth prong where he or she demonstrates that a "comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992) (quotation omitted). The district court concluded that although Ercegovich met the first three elements of the prima facie case, he failed to present evidence sufficient to satisfy the fourth element because he did not identify one or more similarly-situated employees outside the protected class who received more favorable treatment, J.A. at 20 (Dist. Ct. Order at 6), a finding the parties vigorously dispute on appeal. Rather than address whether Ercegovich satisfied the fourth prong of the prima facie case, we will assume for purposes of this appeal regarding this claim that the plaintiff met his prima facie burden. We therefore focus our analysis on Goodyear's non-discriminatory explanation for the elimination of Ercegovich's position and the plaintiff's evidence of pretext.

■ Goodyear offered the following legitimate business reason for its decision to terminate Ercegovich:

> Plaintiff's employment position was eliminated due to the fact that it was redundant with other positions at the Company and the Company's management wanted to distribute his quality assurance duties to the District Mangers in the Retail Sales Division throughout the country so that they would become more involved in the Company's quality program.

---

1. In his complaint, Ercegovich also alleges that from April 1994 through October 1994, Goodyear created a hostile work environment with the intent to cause him to resign from his employment. J.A. at 8 (Compl.¶¶ 8, 13). The district court never addressed this allegation. On appeal, Ercegovich's counsel explicitly waived his client's hostile work environment claim during oral arguments before this court.

J.A. at 37 (Def.-Appellee's Mem. in Supp. of Def.'s Mot. for Summ. J. at 1). In seeking to show that this explanation is pretextual, Ercegovich argues that Goodyear has been inconsistent in explaining its decision and has offered three "different" reasons for the elimination of Ercegovich's position: (1) economics, (2) restructuring, and (3) redundancy. The district court properly found no inconsistency among these assertions because they all "revolve around a single idea: Plaintiff's position could no longer be justified as being cost-effective." J.A. at 26 (Dist. Ct. Order at 12). The district court similarly rejected Ercegovich's argument that because he had not trained every district manager in the skills necessary for improving customer service, he remained valuable to the company, and thus that Goodyear's assertions to the contrary must be false. The district court properly rejected this argument, noting not only that district managers who had previously received quality assurance training could train the remaining district managers, but also that Goodyear's goal of broadening the responsibilities of its district managers and eliminating redundancy was served by redistributing Ercegovich's duties to district managers. J.A. at 26 (Dist. Ct. Order at 12); *see also* J.A. at 449 (Evert Dep. at 48 ("The redundancy issue was there as well as turning over the responsibility for quality to the field organization and that they take complete ownership of it.")). Accordingly, we affirm the district court's conclusion that no genuine issue of material fact exists with respect to whether Goodyear's proffered explanation for its decision to eliminate Ercegovich's position is a mere pretext for intentional age discrimination. Summary judgment was properly granted to Goodyear on this claim.

## B. Opportunity to Transfer

Ercegovich claims that, unlike younger employees in Human Resources Development whose positions were eliminated, he was not offered the opportunity to transfer to other positions within the company. Several months after it eliminated Ercegovich's position, Goodyear eliminated two other positions in Human Resources Development—Paul Evert's position as Manager of Human Resources and Karen Cohn's position as Personnel Development Specialist.[2] Both Evert, age forty, and Cohn, age twenty-eight, were transferred to other positions. J.A. at 378 (Attachment M—Movement of Associates).

### 1. Prima Facie Case

▮ Although an employer is under no obligation to transfer to another position in the company an employee whose position has been eliminated, the employer violates the ADEA when it transfers other displaced employees but does not place the plaintiff in a new position because of age discrimination. *See Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir.1992); *cf. EEOC v. Chrysler Corp.*, 733 F.2d 1183 (6th Cir.1984) (holding that the district court did not err in issuing an injunction requiring the defendant-employer to offer forced retirees "layoff status" when younger employees also affected by the reduction in force were afforded "layoff status"), *reh'g denied*, 738 F.2d 167 (1984). In other words, a plaintiff denied an opportunity to transfer establishes a prima facie case of age discrimination when he or she produces evidence demonstrating that 1) he or she is a member of a protected class; 2) at the time of his or her termination he or she was qualified for other available positions within the corporation; 3) the employer did not offer such positions to the plaintiff; and 4) a similarly-situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position, or other direct, indirect, or circumstantial evidence supporting an inference of discrimination.

Ercegovich claims that at the time of his termination, he was qualified for at least two available positions within the Goodyear corporation, one in Detroit and one in Washington, D.C., and that Goodyear failed to offer him either position. Ercegovich also believes his previous experience qualified him for the personnel position later assumed by Cohn.

---

**2.** Ercegovich was terminated on October 28, 1994. Kim Lauritzen testified that Evert and Cohn's positions were eliminated in April of 1995 as part of the continuing reorganization of Human Resources Development. J.A. at 686, 697 (Lauritzen Dep.).

J.A. at 233–39 (Ercegovich Aff. 1/28/97). Ercegovich· contends that Goodyear's decision not to place him in one of the available positions while transferring Evert and Cohn supports an inference of age discrimination on the part of Goodyear.· The district court, however, disagreed and held that Ercegovich did not meet his prima facie burden. Relying on our decision in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992), the district court concluded that Ercegovich was not similarly-situated · to either Evert or Cohn, neither of whom performed the same job functions as Ercegovich, and thus plaintiff failed to identify a similarly-situated employee outside the protected class receiving more favorable treatment. J.A. at 26–27 (Dist. Ct. Order at 12–13). We believe the district court misconstrued this circuit's precedent in applying an exceedingly narrow reading of the *Mitchell* decision.

▮▮▮▮▮ We explained in *Mitchell* that when the plaintiff lacks direct evidence of discrimination, "the plaintiff must show that the 'comparables' are similarly-situated in all respects," absent other circumstantial or statistical evidence supporting an inference of discrimination. *Id.* at 583. Although this statement appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment, *Mitchell* has not been so narrowly construed. In *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir.1994), this court explained that the plaintiff was simply "required to prove that all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." *Id.* at 802 (emphasis added); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Mitchell* in support of the proposition that "[t]o make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all *relevant* respects" (emphasis added)); *Neuren v. Adduci, Mastriani, Meeks &*

*Schill,* 43 F.3d 1507, 1514 (D.C.Cir.1995) (quoting *Pierce* ); *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir.1995) ("A disparate treatment claimant bears the burden of proving that she was subjected to different treatment than persons similarly situated in all relevant aspects." (quotation omitted)). *Mitchell* itself only relied on those factors relevant to the factual context in which the *Mitchell* case arose—an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment. We held that to be deemed "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583. These factors generally are. all relevant considerations · in cases alleging differential disciplinary action. *Cf. Pierce,* 40 F.3d at 802 (explaining that the distinction in supervisory status between plaintiff and non-minority employee also accused of sexual harassment was relevant because company's liability under Title VII for sexual harassment could depend on employee's status). Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in *Pierce*, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." *Pierce,* 40 F.3d at 802 (emphasis added).[3]

---

3. This court has previously followed the *Pierce* decision and focused on relevant aspects of the employment situation in a number of unpublished opinions. *See, e.g., Heideman v. Airborne Freight Corp.*, No. 96–1921, 132 F.3d 33 (Table), 1997 WL 745502, at *3 (6th Cir. Nov. 24, 1997); *Jones v. Ciba–Geigy, Inc.*, No. 96–1573, 124 F.3d 198, 1997 WL 595083, at *5 (6th Cir. Sept. 25, 1997); *Gore v. Runyon*, No. 96–5378, 113 F.3d 1234, 1997 WL 225660, at *1 (6th Cir. May 1,

A prima facie standard that requires the plaintiff to demonstrate that he or she was similarly-situated in every aspect to an employee outside the protected class receiving more favorable treatment removes from the protective reach of the anti-discrimination laws employees occupying "unique" positions, save in those rare cases where the plaintiff produces direct evidence of discrimination. As the plaintiff-appellant points out in his reply brief, if the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a prima facie case (absent direct evidence of discrimination). Pl.-Appellant's Reply Br. at 4. Thus, under the district court's narrow reading of *Mitchell*, an employer would be free to discriminate against those employees occupying "unique" positions. This circuit has never endorsed such a narrow construction of *Mitchell*. Rather, as explained above and as held previously by this court in *Pierce*, we simply require that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects. A contrary approach would undermine the remedial purpose of the anti-discrimination statutes.

■■■ The district court concluded that the individuals with whom Ercegovich sought to compare his treatment must perform the same job activities as Ercegovich. J.A. at 20 (Dist. Ct. Order at 6). Because none of the individuals with whom Ercegovich sought to compare himself (i.e., Lauritzen, Evert, and Cohn) carried out the same job functions as the plaintiff, the district court concluded that Ercegovich failed to establish a prima facie case. J.A. at 20, 26–27 (Dist. Ct. Order at 6, 12–13). The district court did not address the relevancy of these factors to the plaintiff's claim that Goodyear denied him the opportunity to transfer to open positions within the company on the basis of age. We believe that when an employer makes selective offers of transfer following a reduction in force or a reorganization, differences in the job activities previously performed by transferred and non-transferred employees do not automatically constitute a meaningful distinction that explains the employer's differential treatment of the two employees. Common sense suggests that when an employer harboring age-discriminatory animus eliminates several employees' positions, its decision to transfer its younger workers to new positions while denying its older workers the same opportunity irrespective of past differences in their particular job functions may reflect proscribed age bias. Because the positions previously held by Ercegovich, Evert, and Cohn were all related human resources positions that were all eliminated pursuant to a general reorganization of the department of Human Resources Development at Goodyear's Akron location, we conclude that Ercegovich was sufficiently similarly-situated to Evert and Cohn to satisfy the fourth component of Ercegovich's prima facie case. *Cf. Hawley*, 958 F.2d at 723 (concluding that where the employer failed to transfer the plaintiff, the 62–year old vice president of planning for a corporate division, but transferred his assistant and a planner in another division following a corporate reorganization, a jury could conclude that the employer was motivated by age bias). We therefore hold that Ercegovich presented sufficient evidence to support a prima facie showing of age discrimination.

### 2. Defendants' Proffered Reason and Plaintiff's Pretext Evidence

Rather than offer a legitimate non-discriminatory reason for the differential treatment between Ercegovich and his younger colleagues, Goodyear in effect denies a differential treatment. In other words, its "proffered reason" is that it did in fact offer Ercegovich the opportunity to transfer to other positions within the corporation. According to Goodyear, its agents sought other positions for Ercegovich and identified open positions in Washington, D.C. and Detroit,

1997); *Boggs v. Kentucky*, No. 95–6452, 101 F.3d 702, 1996 WL 673492, at *5 (6th Cir. Nov. 20, 1996); *Mitchell v. Georgia–Pacific Corp.*, No 95– 5067, 91 F.3d 144, 1996 WL 397427, at *5–6 (6th Cir. July 15, 1996).

but the plaintiff was unwilling to relocate from Akron. *See* Def.-Appellee's Br. at 29.

 Once Goodyear articulated a non-discriminatory "reason" for not reassigning Ercegovich to another position, the plaintiff-appellant bore the burden to prove by a preponderance of the evidence that the proffered explanation was a pretext for intentional age discrimination. *See Barnes*, 896 F.2d at 1464. We believe a reasonable jury viewing the evidence as a whole could believe Ercegovich's version of events, which is that he was not offered the opportunity to transfer because of age discrimination. *See* J.A. at 402, 406–07 (Ercegovich Dep.). In her witness statement to the EEOC, Cathy Smith, a human resource consultant at Goodyear, stated that at her October 28, 1994 meeting with Ercegovich, she informed him about the available positions in Washington, D.C. and Detroit. J.A. at 989. Contradicting Smith's EEOC affidavit, Bob Morris, Personnel Manager, stated that when he spoke to Smith the day of or the day after Smith's meeting with Ercegovich, Smith told Morris that she was unaware of any available positions for which the plaintiff-appellant was qualified. J.A. at 717–18 (Morris Dep.). Goodyear also submitted to the EEOC a memo written by Fred Cooper, dated February 15, 1995, stating that on December 2, 1994, Ercegovich returned Cooper's November 30th call, at which time Cooper informed Ercegovich of an opening for a Personnel Counselor. J.A. at 375. Ercegovich's long distance phone records, however, show that he did not call Akron on December 2nd.[4] J.A. at 339–42 (Pl.'s Ex. 8). Moreover, a reasonable jury could discount Cooper's memo since it was written over two months after the alleged phone conversation between Cooper and Ercegovich took place. Ultimately, whether a jury chooses to believe the plaintiff-appellant or the defendant-appellee's version of events depends on the credibility of each party's witnesses, and credibility determinations are for the jury to decide. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir.1995). Viewing the record in the light most favorable to Ercegovich, we be-

lieve that a genuine issue for trial exists as to whether Goodyear afforded Ercegovich the same opportunity to transfer to available positions within the company that it offered younger employees similarly affected by the reorganization of the Human Resources Development group.

In further support of his age-discrimination claim, Ercegovich relies on numerous age-biased statements allegedly made by several individuals occupying high positions in Goodyear's Retail Sales Division, including the vice president overseeing the entire division, Ed Gallagher. According to Ercegovich, on or about December of 1993, Gallagher remarked at a retail staff meeting shortly after his promotion to vice president that "[t]his company is being run by white haired old men waiting to retire, and this has to change." J.A. at 411 (Ercegovich Dep. at 57). Ercegovich also claims that at or about the same time one of the personnel managers told him that Gallagher "had directed that he did not want any employee over 50 years old on his staff." J.A. at 236 (Ercegovich Aff.). The district court concluded that even assuming the truth of Ercegovich's allegations, neither of these discriminatory remarks was relevant because solely Evert decided to eliminate Ercegovich's position. J.A. at 23 (Dist. Ct. Op. at 9). We disagree.

 In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990) ("[S]tatement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official."). This court later explained, however, that the *McDonald* rule was never intended to apply formalistically, and that remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the deci-

---

4. Ercegovich alleges that because Akron is a toll call from his home in Strongsville, any call to Goodyear in Akron would have appeared on his phone bill.

sion to terminate the plaintiff, were relevant. *See Wells*, 58 F.3d at 237–38; *see also Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347–48 (1st Cir.1998) (statement by head of human resources who "participated closely" in plaintiff's termination was admissible to show a discriminatory atmosphere); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995) (age-related statements of corporate vice president who may have "played a role" in the decision to terminate the plaintiff were relevant and could "properly be used to build a circumstantial case of discrimination"). Similarly, the discriminatory remarks of those who may have influenced the decision not to reassign the plaintiff to other positions in the company may be relevant when the plaintiff challenges the motive behind that decision.

We must therefore determine whether a reasonable jury could conclude that Gallagher was in a position to influence the alleged decision to deny Ercegovich the possibility of transferring to available positions within the company. When asked whether Gallagher reviewed the decision to eliminate Ercegovich's position, Lauritzen stated that Gallagher "was involved in some parts of the discussion." J.A. at 700 (Lauritzen Dep. at 59). Moreover, we note that Gallagher, as head of the entire Retail Sales Division, was in a position to shape the attitudes, policies, and decisions of the divisions's managers, including Evert and Lauritzen. *See Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 632 (7th Cir.1996) (biased remarks corroborate plaintiff's discrimination claim where remarks were made by "top policy-makers in the company . . . who [we]re ultimately responsible for the company's employment practices"); *Tuck v. Henkel Corp.*, 973 F.2d 371, 376–77 (4th Cir.1992) (biased statements of head of corporation's R & D Group were probative evidence of age discrimination against plaintiff where speaker may have influenced actual decisionmakers), *cert. denied*, 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). "When a major company executive speaks, 'everybody listens' in the corporate hierarchy." *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 546 (3d Cir.1992) (quoting *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d

Cir.1989)), *cert. denied*, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). Therefore, we conclude that a genuine issue of fact exists as to whether Gallagher was involved in the employment decisions adverse to Ercegovich, and we must assume for purposes of summary judgment that Gallagher did in fact play a meaningful role in those decisions. Gallagher's statements thus cannot be excluded under the *McDonald* rule, and the district court erred in concluding otherwise.

 Our consideration of a speaker's role in the employment decision adversely affecting the plaintiff does not end our inquiry. We must also examine the substance of the discriminatory remarks in determining their relevancy to a plaintiff's claim that an impermissible factor motivated the adverse employment action taken against him or her. "Isolated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.) (quoting *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989)), *cert. denied*, 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993). Goodyear argues that discriminatory remarks are irrelevant unless the plaintiff demonstrates a nexus between the discriminatory remarks and the adverse employment action. See Def.-Appellee's Br. at 19–21. Although we believe a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant. *See La Pointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir.1993) (supervisor's ageist remarks about "oldtimers" constitute direct evidence of age discrimination even though the comments were not specifically about or directed to the plaintiff). In addition, neither of Gallagher's alleged remarks ("this company is being run by white haired old men waiting to retire, and this has to change" and that he does "not want any employee over 50 years old on his staff") can be fairly characterized as "ambiguous" or "abstract." Both remarks on their face strongly suggest that the speaker harbors a bias against older workers. More-

over, when assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus. *Cf. Wells,* 58 F.3d at 237 (holding manager's discriminatory remark indicative of age bias where buttressed by other evidence of discrimination and thus remark was not an isolated comment). Viewing Gallagher's remarks in the light most favorable to Ercegovich and against a backdrop of other evidence of pretext, we conclude that Gallagher's remarks support the inference that age-discriminatory animus entered in Goodyear's alleged decision to deny Ercegovich the opportunity to transfer to available positions within the company.

■ In addition to Gallagher, the plaintiff alleges that other members of the Retail Sales Division's senior management made age-biased remarks. According to Ercegovich, on August 25, 1994, during the 1995 Budget/Business Plan meeting, Gordon Hewitt, Director of Finance for the Retail Sales Division, remarked that "there were some people losing their jobs and they will—but they will be replaced by younger college grads at less money." J.A. at 413 (Ercegovich Dep. at 66). Finally, Ercegovich claims that George Campbell, former Director of Human Resources, informed his personnel managers during a meeting in August of 1993 that "there will be no more promotions of anyone—to different departments—for anyone over age 51." J.A. at 72 (Ercegovich Dep. at 70). *See also* J.A. at 236 (Ercegovich Aff. ¶ 40) (stating that "Campbell had directed that no one over 51 years of age would be cross-trained for development due to age."). Both Hewitt and Campbell reported directly to Gallagher. J.A. at 504 (Pl.'s Ex. 3 (Organizational chart for Retail Sales Division)).

■ The district court concluded that Hewitt and Campbell's statements were irrelevant to the plaintiff-appellant's claims because neither speaker participated in the decision to eliminate Ercegovich's position. J.A. at 23 (Dist. Ct. Order at 9). Although

discriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination, the comments of a nondecisionmaker are not categorically excludable. *See Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 521 (3d Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998). Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. *See Parker v. Secretary, U.S. Dep't of Housing and Urban Dev.,* 891 F.2d 316, 322 (D.C.Cir.1989). "While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff." *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir.1987); *cf. Bevan v. Honeywell, Inc.,* 118 F.3d 603, 610 (8th Cir.1997) ("[S]uch comments are surely the kind of fact which could cause a reasonable trier of a fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury." (quotations omitted)).

■ Discriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time. Thus, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decisionmaking process in another context. *See Conway,* 825 F.2d at 597–98. We therefore believe that "evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment." *Conway,* 825 F.2d at 597. This is especially true when the discriminatory statement is "not an off-hand comment by a low-level supervisor" but a remark by a senior official evidencing managerial policy.

*Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995).

■ We do not mean to imply that any ageist comment by a corporate executive is relevant as evidence of a discriminatory corporate culture. Rather, the courts must carefully evaluate factors affecting the statement's probative value, such as "the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action," *Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 133 (3d Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998), as well as whether the statement buttresses other evidence of pretext. *Cf. Wells,* 58 F.3d at 237. Both Hewitt and Campbell occupied senior positions in the Retail Sales Division. Their alleged statements, both of which occurred in the context of meetings attended by individuals in higher management, evidence a managerial policy hostile to the Division's older workers. Hewitt's alleged comment occurred only two months prior to Ercegovich's termination, while Campbell's alleged remark was made fourteen months prior to the elimination of the plaintiff's position. Finally, we note that the alleged hostility on the part of the most senior managers of the Retail Sales Division may stem from the top, as evidenced by the allegedly discriminatory remarks of Gallagher, the head of the Division. Accordingly, we conclude that the alleged ageist remarks of Hewitt and Campbell are not too attenuated to support a finding that age bias motivated Goodyear's allegedly differential treatment of Ercegovich, as compared to Evert and Cohn. We therefore hold that the statements of both Hewitt and Campbell constitute relevant circumstantial evidence for the jury's consideration, and that the district court erred in concluding that their statements were of no evidentiary value.[5]

We hold that Ercegovich established a prima facie case of age discrimination regarding his failure-to-transfer claim. We also hold that he produced sufficient evidence contradicting Goodyear's proffered legitimate reason to establish that there are genuine issues of fact concerning whether Ercegovich was denied transfer opportunities because of age discrimination. Therefore summary judgment on the refusal-to-transfer claim was inappropriate.

## III. STATE CLAIMS

■ In addition to his discrimination claims under the ADEA, Ercegovich also brings suit under Ohio's age-discrimination laws. Ohio Rev.Code Ann. § 4101.17, *recodified as* § 4112.14 (Banks–Baldwin West 1994 & Supp. 1998). Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis. *See McLaurin v. Fischer,* 768 F.2d 98, 105 (6th Cir.1985) (citing *Barker v. Scovill, Inc.,* 6 Ohio St.3d 146, 451 N.E.2d 807, 808 (1983)). We therefore apply the foregoing

---

**5.** In addition to the alleged statements by Gallagher, Hewitt, and Campbell, the plaintiff-appellant testified that when he told Paul Evert about Gallagher's discriminatory remarks, Evert simply replied "He's the boss." The district court concluded that Evert's alleged statement was too ambiguous and abstract to support an inference of age discrimination. J.A. at 23 (Dist. Ct. Order at 9). We agree. Evert's alleged response reveals little about the speaker's attitude toward older employees.

In addition to introducing into evidence alleged discriminatory remarks by members of the Retail Sales Division's senior management, Ercegovich also offered the opinions of two Goodyear employees indicating that Goodyear discriminated against Ercegovich on the basis of age. According to Ercegovich, Ken Gable, a personnel manager, informed him that the probable reason for his poorer 1994 performance review relative to his earlier job appraisals was that Evert was

setting him up. J.A. at 268 (Pl.'s Ex. 7). Ercegovich also testified that after his meeting with Morris and Lauritzen, at which time he was informed of his termination, Morris informed him that he would be within his rights to file charges against Goodyear. J.A. at 335 (Pl.'s Ex. 7) Ercegovich additionally relies on an anonymous letter received by Anita Fullum, Manager of EEO Practices, referring to Gallagher's statement that he did not want anyone working for him who was over fifty. J.A. at 656 (Fullum Dep.). The district court did not evaluate the admissibility or the evidentiary value of these statements since the district judge refused to consider the statements on the ground that only Evert decided to eliminate Ercegovich's position. On remand, the district court should reconsider the evidentiary value of these statements in light of our opinion and determine their admissibility if relied upon in further proceedings.

analysis to Ercegovich's state claims, and conclude that although the district court properly determined that the plaintiff failed to show that Goodyear's proffered reason for eliminating his position was a pretext for age discrimination, the district court erred in dismissing the plaintiff's state claim that Goodyear applied a discriminatory transfer policy.

## CONCLUSION

Because Ercegovich failed to produce sufficient evidence creating a genuine issue of fact as to whether Goodyear's explanation for its decision to eliminate his position is pretextual, we **AFFIRM** the district court's granting of summary judgment to the Goodyear on this claim. With respect to Ercegovich's allegation that Goodyear discriminated against him when it transferred younger employees affected by the reorganization but allegedly did not afford him the same opportunity, the district court erred in finding that Ercegovich failed to meet his prima facie burden. Because we hold that Ercegovich presented sufficient evidence from which a reasonable jury could infer that Goodyear chose not to reassign Ercegovich because of his age, we **REVERSE** the district court's granting of summary judgment to Goodyear on this claim. We **REMAND** for further proceedings consistent with this opinion.