Earl WATSON, Plaintiff,

v.

FOOD LION, INC., Defendant.

No. 3:99–CV–169.

United States District Court,
E.D. Tennessee,
at Knoxville.

Nov. 21, 2000.

884

David A. Burkhalter, II, Kirk J. Angel, Burkhalter, Rayson & Associates, Knoxville, TN, for plaintiff.

Thomas M. Hale, John B. Rayson, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, for defendant.

1. The THRA prohibits age discrimination and substantially mirrors the ADEA. In dealing with cases brought pursuant to the THRA, Tennessee courts have applied the same standards as those applied by federal courts in addressing cases brought pursuant to ADEA.

### MEMORANDUM OPINION

MURRIAN, United States Magistrate Judge.

This case was referred to the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73(b), Federal Rules of Civil Procedure, for all further proceedings, including entry of judgment [*see* Doc. 8].

This is an action for alleged age discrimination in employment brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated § 4–21–101, *et seq.*[1] This case was tried to a jury over a five-day period beginning October 2, 2000. The jury returned a verdict in plaintiff's favor and awarded him $109,298 in back pay and $100,000 in damages for humiliation, embarrassment and emotional distress as allowed by Tennessee Code Annotated § 4–21–306(a)(7).

### I.  *Factual Background*

The jury found that the plaintiff had proved by a preponderance of the evidence that age was a determining factor in Food Lion's decision to terminate the plaintiff. The defendant offered a legitimate, nondiscriminatory reason for terminating the plaintiff, *i.e.*, the defendant discharged him because he was believed to have been working for the defendant at a time when he was not clocked in on the time clock. The jury found that this reason was a pretext for age discrimination.

The plaintiff was hired by the defendant in 1989 as a meat cutter and was promoted to the position of meat market manager.

*See Bruce v. Western Auto Supply Co.,* 669 S.W.2d 95, 97 (Tenn.Ct.App.1984). Accordingly, the court's analysis and conclusions concerning plaintiff's claim under ADEA apply equally to plaintiff's claim under the THRA.

There is no dispute that he was a good employee and a good meat market manager. There was an incident in 1996 when he was fired for allegedly working off the clock at that time. He was 57 at the time and was replaced by Terry Tenth who was age 36 at the time. The plaintiff complained of the action and was later reinstated but was docked a week's pay, demoted to the meat cutter position, and transferred to a new store.

The plaintiff was working as a meat market manager at the Chapman Highway store in Knoxville, Tennessee, in 1998. On June 1, 1998, he was terminated for allegedly working off the clock. The defendant took the position that since this was the second incident, it was mandatory that he be terminated. The sole evidence against him was a videotape which was viewed several times during the trial of this case. The video showed the plaintiff and Dan Mulberry, a meat cutter, engaged in some discussion and activities in front of a meat counter at the Chapman Highway store. Mulberry testified at trial and said that the two of them were talking about baseball and that the plaintiff was not working off the clock at the time. Mulberry was never interviewed by Food Lion about the content of any conversation that the two of them had. There is no audio on the tape.

The plaintiff contended that the decision makers in this case were Am Goff, store operations director, and Gerald Hull, store operations supervisor. The plaintiff claimed in this case that the defendant had a corporate policy of employing a younger work force and replacing older employees with younger employees. The plaintiff contends that the defendant engaged in a pattern and practice of discriminating against older long-term employees and that he was fired in furtherance of defendant's plan to rid itself of older employees.

The defendant's position in this case is that Mr. Watson was terminated for reasons completely unrelated to his age; that his termination resulted for the simple reason that he violated the defendant's policy prohibiting its employees from working off the clock; that Food Lion had a very strict policy against its employees working off the clock because that violated federal wage and hour laws; that this policy was well known to all of its employees; that the plaintiff violated this policy for a second time and pursuant to corporate policy he was terminated.

The defendant denies that it had any type of plan to have a younger work force and to replace older employees with younger ones. Defendant asserts that Gerald Hull was the decision maker in this case and that Amy Goff was not meaningfully involved in the decision to terminate the plaintiff. The defendant denies that its reason for terminating the plaintiff was in any way pretextual or a coverup for age discrimination.

## II. *Pending Motions*

The following post-judgment motions are considered herein:

1. The plaintiff's motion to amend the judgment to allow for pre-judgment interest [Doc. 78].

2. The defendant's motion for a new trial, or in the alternative, for modification of the damage awards [Doc. 82].

3. The defendant's motion requesting permission to interview jurors [Doc. 89].[2]

**2.** The parties have stipulated that if the verdict in favor of the plaintiff stands and is not set aside that costs in the amount of $5,546.87 should be awarded to the plaintiff and that an attorney's fee of $85,660.75 is appropriate [Doc. 95].

The motions were argued on November 17, 2000.

### III. *Motion in limine No. 5*

■ Defendant filed several motions *in limine* including motion *in limine* No. 5 which objected to the admissibility of various charts created by the plaintiff showing the ages of management employees in Amy Goff's region and in Gerald Hull's region. The undersigned overruled this motion and permitted the introduction of plaintiff's exhibits 2, 3, 8, and 9. The defendant contends that this was reversible error and argues that the plaintiff produced absolutely no supporting or explanatory evidence with these exhibits to demonstrate the ages of the applicant pool from which these management employees were selected, the ages of qualified persons within the labor market, the ages of the persons who made the hiring decisions, or any other evidence which would allow the jury to make a rational inference as to this evidence. The defendant argues that without any appropriate explanatory evidence, this evidence was irrelevant and immaterial.

Plaintiff's exhibit 2 set forth the age of managers in Amy Goff's region as of June 1, 1998. Plaintiff's exhibit 3 is a bar graph demonstrating the same numbers. Plaintiff's exhibit 8 is a chart showing the age of meat market managers in Gerald Hull's area as of June 1, 1998. Plaintiff's exhibit 9 is a chart which shows the ages of meat market managers in Gerald Hull's area as of July 1, 1998.

I agree with the defendant that these raw numbers, standing alone, are inadmissible for the purpose of showing that age was a motivating factor in the discharge of the plaintiff on June 1, 1998. The mere fact that managers in Amy Goff's area were overwhelmingly young does not support an inference of discrimination unless there is some additional evidence regarding the relevant labor market. *See Grano v. The Department of Development of the City of Columbus,* 637 F.2d 1073, 1078 (6th Cir.1980). Normally, this would require proof as to the number and availability of qualified older managers in the labor pool. *Id.; see also Smith v. Leggett Wire Co.,* 220 F.3d 752, 761–762 (6th Cir.2000). The undersigned is of the opinion, however, that there was direct evidence of age discrimination in this case which made the numbers depicted on these exhibits admissible and relevant on the question of age discrimination.

William L. Grantham, worked as a meat market manager with Food Lion between 1988 and 1998. One of his supervisors was Amy Hull. He testified regarding a conversation that he had with her in November, 1997 when she visited the Food Lion store at which he was working. He testified that he asked Ms. Goff about a raise for himself. Her response was that the company was restructuring and she told him words to the effect that the company was going to try to move some older people out of jobs in the company and replace them with younger ones.[3] According to Grantham's testimony, she told him that Food Lion was going to have to move out persons in the 55 to 60 year old category and people who were not doing their jobs. On redirect examination, he testified that Ms. Goff specifically referred to market managers and said that 55 to 60 year old people were not getting their jobs done. Mr. Watson was 60 years old when terminated.

---

**3.** I do not have a transcript of the proceedings and so his testimony is paraphrased from my notes taken at trial.

Mr. Watson testified that he had several conversations with Ms. Goff while he was an employee of Food Lion. He said that on one occasion he asked about whether or not he could hire more employees to work in the meat market. He said that Ms. Goff's response was that the company wanted to hire younger part-time employees. He said that about two weeks before he was terminated Ms. Goff told him that if there were hires to be made that younger part-time persons would be hired. He said that he asked her why and she said that the purpose would be to reduce expenses, younger people would get out more work, and that the company could bring these younger part-time employees up the "Food Lion way."

One of the benefits granted to Mr. Watson when he was hired by Food Lion in 1989 was that he was allowed to work four hours of overtime each week. At some time just before his termination, Ms. Goff called him and asked him to forego the overtime work.

The day that Mr. Watson was fired, he testified that Gerald Hull showed him the videotape and told him that Ms. Goff had passed the word down to Mr. Hull that the plaintiff was to be fired. Watson testified that Gerald Hull denied that he or the store manager, Larry Powell, wanted to fire the plaintiff. Larry Powell testified that he was not convinced by the video that the plaintiff was indeed working off the clock.

The undersigned admitted plaintiff's exhibits 2, 3, 8, and 9 because they are relevant evidence supporting the plaintiff's theory of the case that Food Lion was following a company policy of hiring younger part-time employees. As indicated above, the jury heard testimony that the company was interested in hiring younger part-time employees and bringing them along in the "Food Lion way." And so,

the labor pool of qualified managers, according to the plaintiff's theory and evidence in the case, was comprised of younger individuals who were hired part-time and trained in the "Food Lion way." The plaintiff in effect argued that the labor pool for managers had been artificially manipulated by it to include only younger people and the exhibits supported that assertion.

The defendant argues that the exhibits demonstrate hiring decisions or promotional decisions and have no nexus to the decision to terminate the plaintiff. This might be true were it not for the direct evidence which was before the jury that the company wanted to move managers in the age range of 55 to 60 out of the company.

The jury reasonably could have found that the defendant had a policy of hiring younger part-time employees. The jury reasonably could have inferred from the evidence that these younger part-time employees were developed by the company in the "Food Lion way" and that this created an artificial pool of younger employees from which managers were drawn; and that this supported the plaintiff's theory of the case that older managers were being forced out of the company. Thus, I cannot agree that no nexus was established between the evidence offered and the decision to terminate the plaintiff.

Additionally, in discrimination cases, background evidence "may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." *Robinson v. Runyon*, 149 F.3d 507, 512–513 (6th Cir.1998) (internal citation omitted). The evidence was relevant and admissible. Fed.R.Evid. 401, 402, and 403.

Plaintiff's exhibits 2, 3, 8, and 9 were properly admitted.

#### IV. *Motions in limine 6, 7, 9, and 10*

■ The defendant contends that the basis of the plaintiff's argument that age was a factor in his termination centers around his and Mr. Grantham's testimony concerning statements Amy Goff allegedly made to them. The defendant contends that Gerald Hull terminated the plaintiff, and Amy Goff was not meaningfully involved in his termination; that the "full-time/part-time ratio" is a tool that defendant encourages its managers to use to increase scheduling flexibility and to reduce wages as a percent of sales and that the goal for each food store was for both the number of hours worked by full-time employees and the number of hours worked by part-time employees to be 50% of total hours. The defendant argues that the evidence showed that the part-time positions were primarily lower level, unskilled jobs such as grocery baggers, cashiers, and stockers and that the evidence showed that no department managers worked on a part-time basis. The defendant argues that the testimony concerning the "full-time/part-time ratio" is irrelevant and lack any probative value on the issue of whether plaintiff's age was a determining factor in the decision to terminate him. The defendant argues that this is a termination case and not a failure to hire case and that there is no evidence that the "full-time/part-time ratio" would have been improved as a result of the plaintiff's termination from his full-time position. The defendant argues that the plaintiff made no attempt to relate or draw any nexus between the substance of the statements to the challenged decision to terminate the plaintiff and that when such statements do not relate to the position or job held by the plaintiff and there is a complete absence of any evidence of a nexus to the contested decision it was error to have allowed the testimony. Defendant argues that at the very least the probative value of any such evidence was substantially outweighed by the danger of unfair prejudice, confusion in the issues, and the risk of misleading the jury in violation of Fed.R.Evid. 403.

The undersigned rejects the defendant's position that Ms. Goff was not meaningfully involved in the decision to terminate the plaintiff. As indicated above, the plaintiff testified that when he was terminated by Gerald Hull, Hull told him that Ms. Goff had "passed it down" that he should be fired. Of course, Goff was Hull's immediate supervisor. Amy Goff's own testimony acknowledged that she was involved in the decision to fire the plaintiff. She said that she and Gerald Hull had made the decision. As indicated above, there was testimony in this case from which the jury could have found that Amy Goff told William Grantham that the company was restructuring and was moving older people out to be replaced by younger ones; that persons in the age group of 55 to 60 and people not doing their jobs were going to be moved out of the company; and that she had specifically referred to market managers in the conversation.

Jimmy Ledbetter, a former employee of Food Lion and assistant manager at the Chapman Highway store, testified that Ben Newport, Regional Training Specialist for Food Lion, told him that Food Lion was looking to hire younger part-time employees.

> Goodyear argues that discriminatory remarks are irrelevant unless the plaintiff demonstrates a nexus between the discriminatory remarks and the adverse employment action.... Although we believe a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remarks' probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant.

·  *    *    *    *    *    *

Moreover, when assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark an isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus.... Viewing Gallagher's remarks in the light most favorable to Ercegovich and against a backdrop of other evidence of pretext, we conclude that Gallagher's remarks supported the inference that age-discriminatory animus entered in Goodyear's alleged decision to deny Ercegovich the opportunity to transfer to available positions within the company.

*Ercegovich v. Goodyear,* 154 F.3d 344, 355–56 (6th Cir.1998) (citations omitted); *see also Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1331 (6th Cir.1994)(Although statements were made by a decision maker not in the context of termination, the statements were reflective of a deep-rooted, ongoing pattern of discrimination.).

Statements by Amy Goff that the company wanted to replace older employees with younger part-time employees were admissible in support of the plaintiff's direct evidence that the company was intentionally weeding out older managers. Additionally, "[c]ircumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff." *Ercegovich v. Goodyear,* 154 F.3d at 356.

Discriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decision making process for a considerable time. Thus, management's consideration of an im-

permissible factor in one context may support the inference that the impermissible factor entered into the decision making process in another context.... We therefore believe that evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or time frame involved in the specific events that generated a claim of discriminatory treatment.

*Id.* (internal citations and quotations omitted).

## V. *Special Jury Instruction No. 10*

■ The defendant submitted Special Jury Instruction No. 10 because it was concerned that the jury might conclude that the defendant was discriminating on the basis of age based upon its interest in hiring part-time employees to improve the part-time/full-time ratio if the jury believed that the majority of part-time positions were held by younger employees.

The proposed jury instruction read as follows:

In an age discrimination case, plaintiff has to convince you that his age actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decision making process and had a determining influence on the outcome.

You have heard evidence regarding the defendant's tool known as the part-time to full-time ratio. In the absence of credible evidence that such a policy was adopted in order to discriminate against older employees, an employer's decision that a certain percentage of its employees should be part-time is not, in and of itself, discrimination because of age. This is true even if the employer compensates part-time workers less than it does full-time workers and as a result,

part-time work is less preferable to older workers. The Age Discrimination in Employment Act does not require an employer to adopt hiring policies that favor older workers.

The jury was carefully instructed in this case that the plaintiff was not to be given a preference because of his age. The jury was also instructed that it was not to substitute itself for the judgment of the employer and that age discrimination is not demonstrated simply because a jury might find that the employer acted unfairly in terminating or taking other adverse action against an employee. It was the plaintiff's theory in this case, and there was evidence to support it which the jury could have believed, that it was defendant's policy to hire younger part-time employers which were then brought along in the "Food Lion way" such that the managerial ranks of Food Lion were disproportionately filled with young managers. As indicated above, there was evidence from which the jury could have concluded in this case that Food Lion had a policy of hiring younger part-time employees who would later take managerial positions vacated as a result of terminating managers in the older age groups.

The jury was instructed properly in this case and the undersigned's refusal to give proposed jury instruction No. 10 is not a ground for a new trial.

### VI. *The Back Pay Award* [4]

■ The award of back pay was in the amount of $109,298.00 which is the exact amount calculated by plaintiff's expert, Dr. John R. Moore, as the economic loss for the two and one-third year period from plaintiff's termination until trial. Plaintiff's exhibit 45A. The defendant argues that at least for one year of this period the

plaintiff was doing nothing to meet his duty to mitigate. The defendant points out that after June 1, 1999, when the plaintiff obtained a part-time job at a competitor food store, he ceased looking for employment at least until the time of his deposition one year later. The defendant also complains that the back pay estimate by Dr. Moore was derived using as a base plaintiff's 1997 wages earned from Food Lion, rather than the wages from plaintiff's most recent period of employment with Food Lion, January through May, 1998. Defendant argues that the proof was that the 1997 earnings were unusually high because the plaintiff worked substantially more overtime than normal. The defendant also points out that the award includes $6,743.00 as the employer's contribution to Social Security even though, as Dr. Moore testified, if the defendant were required to pay back pay, it would be required to make a Social Security contribution in the amount paid.

The defendant argues that the award of back pay is designed to make the plaintiff whole or to put him in the position he would have been in but for the defendant's unlawful conduct. The defendant contends that the back pay award in this case was excessive for the reasons indicated.

The jury credited the testimony of Dr. John R. Moore and awarded the plaintiff the exact amount of back pay to which Dr. Moore said the plaintiff was entitled. Dr. Moore's qualifications were not challenged and his testimony was admissible in all respects. Dr. Moore explained to the jury the reason he used the plaintiff's 1997 income to compute plaintiff's losses and he explained why he included the amount of the Social Security contribution in the back pay calculation. He testified that he believed that Food Lion would have to pay

---

4. The jury found that the defendant had not willfully discriminated against the plaintiff

and so the back pay award was not doubled. The jury also declined to award front pay.

Social Security tax on any back pay award that resulted from a judgment in this case. He conceded that the employer ends up paying twice if the amount of the Social Security tax is also included in the award to the plaintiff. The defendant offered no expert testimony that the employer would indeed pay the Social Security tax twice under the circumstances. The only evidence in the record that Food Lion would be charged twice for the same Social Security tax is Dr. Moore's response to a question on cross-examination that "I believe they would." Tr. at 25. It was up to the jury to consider whether or not inclusion of this Social Security tax was proper in the back pay award and this is not a ground for suggesting a remittur or new trial.

The question of mitigation of damages was clearly one for the jury. Plaintiff introduced evidence that he did seek employment. The plaintiff had heart problems and he, of course, was an older worker. The defendant did introduce into evidence that meat market manager and meat cutter jobs were available during the time that the plaintiff was looking for work. Mrs. Watson testified that plaintiff's termination had affected him psychologically and had affected their marital relationship. She said that he had suffered a series of setbacks in his life that had affected his ability to work including the total destruction of their home by fire in May of 1999, the death of his father in August of 1999, and a bout with colon cancer after he had been terminated. Mr. Watson testified that he got very depressed after his termination and took prescription medication for his depression. He testified about his efforts to obtain employment after his termination and this was for the jury to evaluate. He said that the financial strain of losing his job had caused him to cash in his life insurance policies and to liquidate his retirement account that he had earned with his retirement from the A & P Company. His heart condition may have made it difficult for him to obtain employment.

Under all the circumstances, the undersigned finds that the award of back pay was supported by substantial evidence and should not be disturbed.

### VII. Damages for Humiliation, Embarrassment, and Emotional Distress

Under the totality of the circumstances, the $100,000 awarded for humiliation, embarrassment, and emotional distress is not excessive and will not be disturbed.

### VIII. Prejudgment Interest

In light of the fact that the jury accepted in toto Dr. Moore's assessment of the back pay award, the undersigned is of the opinion that it is not necessary to award the plaintiff prejudgment interest in order to make him whole. The motion for an award of prejudgment interest will therefore be denied.

### IX. Motion Requesting Permission to Interview Jurors

The defendant's motion to interview jurors will be granted. At the time of oral arguments in connection with the motion for new trial, the undersigned advised counsel for both parties that the jury would be notified by letter from the court that they were not obligated to speak to counsel about the case but could do so if they so desired. Once counsel receive a sample copy of the letter that will go out to the jurors they may contact the jury about this case.

Order accordingly,