GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
I join the portion of the majority’s opinion that affirms the summary judgment granted in favor of Judge Charles Kubicki.
However, regarding plaintiff Cassandra DeNoma’s sex discrimination claim against defendant Michael Walton, I respectfully dissent from the majority’s decision to reverse the summary judgment granted in favor of Walton. In this regard, I diverge from the majority opinion in one critical respect: causation. Under these facts, a reasonable trier of fact could not find that Walton’s alleged gender bias was a proximate cause of DeNoma’s injury. On the contrary, the asserted causal connection between Walton’s bias and the interview committee’s — and subsequent hiring committee’s — decision not to promote DeNoma rests entirely on speculation and conjecture. For this reason, I would affirm the district court’s grant of summary judgment.
DeNoma relies on an inverse cat’s paw theory in her attempt to prove that Walton, the supervisor of the three members of the interview committee, infected the committee with his bias and that Walton’s bias was a motivating factor in the committee’s recommendation to promote two male employees over DeNoma. The cat’s paw theory “involves circumstances where a seemingly unbiased decisionmaker makes an adverse employment decision that was in part motivated by a biased subordinate.” Davis v. Omni-Care, Inc., *113 482 Fed.Appx. 102, 109 (6th Cir.2012) (citing Cobbins v. Tenn. Dep’t of Transp., 666 F.3d 582, 586 n. 5 (6th Cir.2009)); see also Staub v. Proctor Hosp., 562 U.S. 411, 419-23, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011). When a plaintiff challenges the denial of a promotion as motivated by a supervisor’s discriminatory animus, she “must offer evidence of a ‘causal nexus’ between the ultimate decisionmaker’s decision [not to promote] the plaintiff and the supervisor’s discriminatory animus.” Madden v. Chattanooga City Wide Serv. Dep’t, 549 F.3d 666, 677 (6th Cir.2008). In short, a plaintiff must demonstrate that “[b]y relying on this discriminatory information flow, the ultimate decisionmakers acted as the conduit of [the discriminatory actor’s] prejudice — his cat’s paw.” Id. at 678 (emphasis added) (internal quotation marks omitted).
In this case, there is insufficient evidence to establish that the interview committee “rel[ied] on” a discriminatory information flow. On this issue, DeNoma’s theory hinges on two facts: first, that Walton had a close working relationship with each of the interview committee members, and, second, that Walton expressed to interview committee member Krista Ventre his thoughts on two good candidates for the Assistant Chief Probation Officer (“ACPO”) position and conveyed dissatisfaction with DeNoma’s performance. Walton made these comments to Ventre “months” prior to the ACPO job posting. From these facts, DeNoma asserts that a reasonable jury could reasonably infer that Walton may have poisoned the interview committee’s recommendation. I do not agree.
Walton was not on either of the selection committees. Nor did he select the members of the interview committee— Judge Kubicki made that decision. There is no evidence that Walton discussed his hiring preferences with the two other committee members or that he expressed his opinion to Ventre near the time the ACPO position was posted. Further, although Ventre testified that Walton had in the past expressed dissatisfaction with DeNo-ma’s performance, Walton never offered Ventre his opinion on DeNoma’s qualifications for the ACPO position. Instead, months before the ACPO position was posted, Walton merely expressed his opinion on two employees who might excel as the ACPO. In this regard, the degree to which Walton may have commented on DeNoma’s candidacy is weak or nonexistent. Tellingly, neither of the two men Walton mentioned months prior to the job posting were selected for promotion. The two men Walton mentioned were Brian Urban and Jerry Campbell, who became the other interview committee members.
Moreover, there is no evidence that Ven-tre shared Walton’s opinions with the other interview committee members. All three members stated that they did not consider Walton’s preferences in making their recommendation and offered specific reasons why the successful candidate was selected, such as his impressive interview performance and constructive ideas for the future of the probation department. Ven-tre, for example, averred that she “never considered who Walton might want, or not want, appointed to the Assistant Chief Probation Officer position in 2010 when reaching [her] conclusion as to which applicants) to recommend for the position.” She also testified, “Mike Walton and I didn’t always share the same views on things. Just because he had an opinion of one thing didn’t mean that I had to have the same opinion or agree with his opinion.” Ultimately, there is insufficient evidence from which a reasonable trier of fact would reasonably infer that the committee relied on discriminatory information from Walton in making its decision. In opposing a supported motion for summary judgment, the non-moving party may not rest *114 on speculation or conjecture, but must demonstrate by admissible evidence the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(c), (e); Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir.2003) (“[T]his circuit has long held that ‘mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden [of demonstrating a genuine issue of material fact].’ ”).
In an effort to fill this evidentiary void, DeNoma relies on the fact that Walton had close working relationships with the interview committee members. However, this alone is insufficient. In both Chattman v. Toho Tenax America, Inc., 686 F.3d 339 (6th Cir.2012), and Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir.1998), cited by the majority, the discriminatory actors were not just in positions of probable influence; they actually exercised influence over the decisionmak-ing process. In both cases, our court emphasized that the biased supervisor was “involved in some parts of the discussion” resulting in adverse action. Chattman, 686 F.3d at 353; Ercegovich, 154 F.3d at 355. Additionally, in Chattman, there existed a genuine issue of material fact regarding whether the biased supervisor had discriminated by selectively presenting information to senior decisionmakers because he reported only an African-American employee for engaging in horseplay, not Caucasian employees. Chattman, 686 F.3d at 353. In the present case, there is no comparable evidence to suggest that the interview committee received, much less relied on, biased information from Walton.
For these reasons, I respectfully concur in part and dissent in part. I would affirm the judgment of the district court.