Bobby G. ANDREWS, Plaintiff–Appellant,

v.

CITY OF COOKEVILLE, TENNESSEE, et al., Defendants–Appellees.

No. 01–6413.

United States Court of Appeals, Sixth Circuit.

April 3, 2003.

Before COLE, GILMAN, and BRIGHT,* Circuit Judges.

PER CURIAM.

The City of Cookeville, Tennessee ("City") first employed Bobby Andrews as a police officer on August 21, 1975. At that time, he was still going to school in a nearby town, and voluntarily quit when the City asked him to move to the City. In May 1979, the City again employed Andrews as a police officer. He worked there until September 1989 when he accepted a job as a criminal investigator with the Public Defender's Office. In June 1999, the City had an opening for a police officer and Andrews applied for the position. Andrews passed the written examination and the agility examination and was given an interview. He was ranked eighth among the applicants and was not hired.

Andrews brought suit against the City and the City's police chief, Robert Terry, in his official capacity, for age and sex discrimination. The federal district court granted the City's motion for summary judgment and dismissed the action. Andrews appeals the judgment, asserting as error only the rejection of the age-discrimination claim. We reverse the grant of the summary judgment and remand the matter for further proceedings.

## I. BACKGROUND

Andrews filed this action under the Tennessee Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Age Discrimination In Employment Act of 1967

("ADEA").[1] The City removed the case to federal court under 28 U.S.C. § 1331, the federal question statute. The City and Terry filed a motion for summary judgment and the district court granted that motion on September 29, 2001. Andrews appeals the court's decision granting summary judgment on his age-discrimination claim, but he does not appeal the decision on his sex-discrimination claim.

Andrews began work as a police officer with the City on August 21, 1975. The parties dispute whether Andrews was terminated or voluntarily quit the next day. Andrews testified that after he began work, he was informed that he would need to relocate his residence to the City. At the time, Andrews was still in school and living in Crossville, Tennessee. Andrews states that he advised his supervisor that he would remain in school rather than move to the City and so he voluntarily quit. In its findings of fact, the district court accepted Andrews's version of events.

Andrews rejoined the City's Police Department in May 1979. He stayed with the Department until September 1989, when he left to become a criminal investigator with the Public Defender's Office. According to the City, when Andrews separated from the Department this second time, he was designated as not eligible for rehire by then Chief of Police, William Benson. Former Chief Benson testified that after reviewing Andrews's file, the only reason he observed for Andrews's ineligibility was that he had left the Department without providing proper notice. Although Andrews did not recall abandoning his post in the middle of a shift, he did

---

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The parties do not contest that analysis of a claim under Tennessee's Human Rights Act is identical to analysis of the elements and burden of proof under the ADEA.

admit that he could not deny that it occurred.

In December 1998, while still employed by the Public Defender's Office, Andrews began to seek other employment and once again filled out an application for employment with the Department even though an opening was not then available. In June 1999, Andrews saw an advertisement for a police officer position with the City, and he completed another application.

The City called Andrews to take the written examination for the position. After Andrews took the written test and the physical agility test, he was granted an interview with various members of the Department. Andrews scored 78 on the written exam, the fifth highest score among those taking the exam. Andrews passed the physical agility test, which was evaluated on a pass/fail basis. During the agility examination, Chief Terry made the comment to Andrews that Andrews was just like George Foreman and he did not know when to quit. Andrews's average score on the interview was 29.6. which was the eighth highest score among the applicants. The oral interview process consisted of five officers asking a standard set of questions. Each interviewer graded the applicants and the scores were averaged.

The City did not hire Andrews. He received a letter dated August 11, 1999, from the Director of the City's Department of Human Resources stating that he would not be given further consideration at that time.[2] The City offered the position to Tammy Goolsby. Goolsby scored higher than Andrews on the interview. Andrews confronted Chief Terry about the decision not to hire him. Terry allegedly told Andrews that Goolsby was selected because she finished close to the top in the interview process, she was qualified, and she was a woman.

After Goolsby was hired, the City hired three additional officers, all of whom were in the same applicant pool as Andrews. According to Andrews, one of the male officers hired by the City scored lower than he did on the oral interview. At the time of this incident, five of the Department's highest ranking officers were over forty years old. Andrews was forty-eight years old.

Andrews argues that he was more qualified than other applicants, including Goolsby, because he graduated first in his class at the Tennessee Law Enforcement Training Academy, had an associates degree, and had approximately eleven years of experience as a police officer.

## II. DISCUSSION

A grant of summary judgment is reviewed de novo. *See City Mgmt. Corp. v. United States Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994). The appellate court must determine, viewing the evidence most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law. *See id.* If the nonmoving party cannot make a sufficient showing on an essential element of its case, the moving party will be entitled to judgment as a matter of law. *Celotex*

---

**2.** The full text of the letter reads:

Thank you for your interest in employment with the Cookeville Police Department. We realize it involves a significant amount of time and energy to participate in the application process for police officer.

After reviewing information on each person interviewed, it has been determined that you will not be given further consideration for employment at this time.

Again, thank you for your interest in working for the City of Cookeville. Good luck in your search for employment.

J.A. at 135.

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The district court determined that Andrews was over forty years of age and qualified for the position of police officer. While younger applicants were chosen for the position, the district court explained: "Plaintiff was not among the top candidates as reflected by the fact that his score on the variances tests ranked him eighth." After characterizing the George Foreman comment as "ambiguous," the court accepted Andrews's view that Chief Terry's remark was a reference to his age, and concluded that this comment would give rise to an inference of age discrimination by the City. The court cited *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 355–56 (6th Cir.1998), and concluded that the manager's remarks in that case "were much more obvious than here, but the Sixth Circuit held that those remarks were 'too attenuated to support a finding that age bias motivated' the employment decision."

The court next noted the following facts: (1) Andrews's low ranking among the applicants: (2) there were multiple persons other than Police Chief Terry involved in the decision-making process; and (3) "the presence of other officers over the age of forty." Given these facts, the court concluded that Police Chief Terry's remark was insufficient to support an age-discrimination claim.

Although it is not entirely clear, the district court appears to accept that Andrews presented evidence sufficient to satisfy his prima facie burden for an age-discrimination claim. The City argues that Andrews fails to establish a prima facie case in that he was not qualified for the position of police officer because then Chief Benson had designated him as ineligible for rehire.

■ We reject this argument and conclude that Andrews established a prima facie claim of discrimination. The district court implicitly rejected the City's claim that Andrews was not qualified for the position. In its findings of fact, the court discusses Benson's statement that if the City wanted to rehire Andrews then it would do so regardless of whether Benson had determined that Andrews was ineligible for rehire. The court does not discuss this matter at any other point in its opinion.

■ We now explicitly reject this contention. The City allowed Andrews to take the written and physical exams and granted him an oral interview. The City's rejection letter to Andrews makes no mention of his disqualification. Our decision comports with the notion that "the burden of establishing a prima facie case of discriminatory treatment is not meant to be 'onerous.'" *Christian v. Wal–Mart Stores, Inc.,* 252 F.3d 862, 870 (6th Cir. 2001) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ Based on our reading of the district court's opinion, the court granted summary judgment because Andrews failed to show that the City's explanation for not hiring him was pretextual. Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), after the plaintiff has established a prima facie case, the burden shifts to the City to articulate a legitimate nondiscriminatory reason for not hiring Andrews for the position.

In assessing the City's proffered nondiscriminatory reason for not hiring Andrews, the district court only considered the City's hiring of Tammy Goolsby. The court did not consider the other individuals hired by the City since June 1999. In the City's response to Andrews's first set of

interrogatories, the City lists eight individuals who had filled police officer positions with the City since June 1999. Andrews directs our attention to the case of Brian Chase Mathis, age twenty-two. Mathis had a lower score on the oral interviews, but nonetheless was offered a position with the City. The City interviewed Mathis on the same day it interviewed Andrews. Mathis scored an average of 28.2, while Andrews scored 29.6.

The district court did not mention Mathis in its opinion, nor did it explain why it was limiting its consideration of the facts to Tammy Goolsby's position.

Andrews finds fault in this omission and urges us to consider that the combination of the City's hiring Mathis, despite his lower oral interview score, plus Chief Terry's comment and direct involvement with the hiring process, are sufficient to allow a trier of fact to disbelieve the City's legitimate, nondiscriminatory explanation for its actions.

The City would have us limit consideration of the facts to the four officers hired by the City who scored higher than Andrews. Like the district court opinion, the City's brief does not mention Mathis at all. However, the City cites no authority for limiting the pool of those hired to just Tammy Goolsby.

We agree with Andrews's contention that the circumstances relating to the hiring of Mathis rather than Andrews plus Chief Terry's comment and his direct involvement in the hiring process are sufficient to overcome the City's motion for summary judgment.

## III. CONCLUSION

Accordingly, we reverse and remand this case for further proceedings on the age-discrimination claim consistent with this opinion.