**Karen A. SUCCARDE, Plaintiff–Appellant,**

**v.**

**FEDERAL EXPRESS CORPORATION; Fedex Ground Package System, Inc., Defendants–Appellees.**

**No. 03–1227.**

United States Court of Appeals, Sixth Circuit.

Aug. 4, 2004.

Patrick J. Burkett, Gerald D. Wahl, Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for Plaintiff–Appellant.

Jerome R. Watson, Megan P. Norris, Jennifer L. Sabourin, Miller, Canfield, Paddock & Stone, Detroit, MI, for Defendants–Appellees.

Before DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

GIBBONS, Circuit Judge.

Plaintiff-appellant Karen A. Succarde appeals the district court's decision granting summary judgment in favor of her former employer, defendant-appellee FedEx Ground Package System, Inc ("FedEx Ground"). Succarde brought suit alleging that FedEx Ground unlawfully terminated her employment in violation of the Age Discrimination in Employment Act of 1969 ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Elliott–Larsen Civil Rights Act ("Elliot–Larsen Act"), Mich. Comp. Laws § 37.2101, and the Employee Retirement Income Security Act ("ERISA"). The district court found that Succarde failed to meet her burden of establishing that FedEx Ground's proffered reason for her termination was pretext for either age or gender discrimination. For the following reasons, we affirm the judgment of the district court.

## I.

In February 1987, Succarde began working as a sales representative for RPS, Inc., ("RPS"), which was later acquired by FDX Corporation and became FedEx Ground. Several years later, she was pro-

moted to the position of senior account executive. Although Succarde received a pay raise for this promotion, her duties did not change. In December 1997 or January 1998, she was promoted to the position of national account executive. As a national account executive, Succarde was responsible for geographic territory in Michigan and for accounts with potential revenue of more than one million dollars. She was also responsible for a sales quota. The quota incorporated two components: the total dollar value of the service package sold and the revenue per package. For her first six months as a national account executive, Succarde was supervised by Paul Rokich. In June 1998, Succarde was reassigned to Tim Jones. In his first evaluation of her performance as a national account executive, Jones gave Succarde a 3.46 out of a possible 5.0, which put her in the category of "Meets Expectations." Jones noted that Succarde's transition from transactional sales to national account management was a "significant change," but that she was "adapting well," and that he was "proud" to have her on his team.

Within a month or so after becoming her supervisor, Jones gave Succarde responsibility for two additional accounts. Prior to this increase, Succarde had met her quota each month, but after Jones gave her the additional accounts, she performed at between 92% and 94% of her quota. She never met her quota for the fiscal year after becoming a national account executive. She did, however, meet the "revenue per package" component standard, and she ranked tenth in the country among FedEx Ground's national account executives according to that measure. In her deposition, Succarde claimed that her quota changed "roughly six times" after Jones became her supervisor, but a review of the record indicates that her quota for fiscal year 1999 was nonetheless the second lowest among the twelve employees reporting to Jones that year.

Succarde was well aware that her supervisors were concerned about her inability to meet her quota. She had meetings with her supervisors to discuss her quota every six months. In January 2000, Succarde was warned that her performance and results had to improve "quickly" in order to meet the requirements of the national account executive position. In his 2000 evaluation of Succarde's performance, Jones noted that he was "very concerned about Karen's territory, her ability to grow profitable revenue[,] and to develop collaborative relationships over the long-term." He gave her a rating of 2.4 out of a possible 5.0, which put her in the "Below Meets Expectations" category. By February 2000, Succarde had dropped to 82% of her quota. Yet as of March 13, 2000, six out of the twelve people reporting to Jones had higher quotas to meet than she did.

Succarde testified that her low quota numbers leading up to her January 2000 evaluation could be explained because she had just taken two months of sick leave and no one had serviced her accounts in her absence. On March 10, 2000, Succarde prepared a "Gap Analysis" to explain the gap between her actual numbers and her quota. In this document, Succarde acknowledged that she was well below her quota and that she would not be able to make up her deficit for the year.

On April 14, 2000, Succarde's employment was terminated due to her poor performance. Prior to her termination, Succarde experienced losses in her top ten accounts for two years in a row. She had only one new customer in 1998, and none in 1999 or 2000. In addition to her failure to meet her sales quota, Succarde also failed to meet her targets for number of days selling, number of days in the office,

and number of sales calls. Two employees assumed Succarde's responsibilities after her employment was terminated. Tony Rosier, then thirty-two years old, took over Succarde's accounts in Western Michigan, while Michelle Dunn took over her accounts in the Detroit area.

On June 19, 2000, Succarde filed a charge of discrimination with the EEOC, alleging that she had been discriminated against because of her age. On April 10, 2001, she filed a second EEOC complaint, alleging that she had been discriminated against on the basis of both her age and her sex. The EEOC did not pursue either charge, and Succarde filed a complaint in United States District Court for the Eastern District of Michigan, alleging sex discrimination in violation of Title VII, age discrimination under the ADEA, and age and sex discrimination under the Elliott–Larsen Act. Succarde also asserted an ERISA violation. She alleged that a determining factor in her termination was FedEx Ground's desire to prevent her from attaining the service required to obtain the increase in health and pension benefits that resulted from FedEx Ground's subsequent merger with FedEx Corporate Services on June 1, 2000.

The district court subsequently granted FedEx Ground's motion for summary judgment.[1] The court concluded that Succarde had failed to file a timely charge of gender discrimination with the EEOC and that she had failed to meet her burden of establishing pretext on her remaining claims. On February 19, 2003, Succarde filed a notice of appeal from the district court's "Memorandum and Order Granting Defendants' Motion for Summary Judgment," but in her brief on appeal, she addresses only the district court's grant of summary judgment on her ADEA claim and her state law gender discrimination claim under the Elliott–Larsen Act. Because she has failed to set forth any argument regarding her claims under Title VII and ERISA, we conclude that she has waived consideration of these issues on appeal and consider only her arguments that the district court erred in dismissing her ADEA and Elliott–Larsen Act claims. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996).

## II.

This court reviews a district court's decision granting summary judgment *de novo. DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute over a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the district court's decision granting summary judgment, this court draws all justifiable inferences in favor of the nonmoving party.

---

1. In her complaint, Succarde named Federal Express Corporation as an additional defendant. Federal Express Corporation owns FedEx Corporate Services, which, as mentioned earlier, merged with FedEx Ground after Succarde's employment was terminated. The district court concluded that Succarde had not submitted any evidence that she was employed by Federal Express Corporation and granted summary judgment in its favor on all of her claims against it. Succarde has not challenged this determination on appeal. We therefore affirm the district court's decision granting summary judgment in favor of Federal Express Corporation.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Because Succarde has not offered any direct evidence that she was discriminated against on the basis of her age or sex, both this court and Michigan courts look to the familiar tripartite framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) in order to evaluate her claims that she was discriminated against on the basis of her age and her sex. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998); *Hall v. State Farm Ins. Co.*, 18 F.Supp.2d 751, 766 (E.D.Mich.1998). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for her position, (3) despite her qualifications and performance, she suffered an adverse employment action, and (4) she was replaced by a person outside the protected class or she was treated less favorably than a similarly-situated individual outside her protected class. *Cicero v. Borg–Warner Auto., Inc.*, 280 F.3d 579, 583 (6th Cir.2002). Once the employee satisfies this burden, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action at issue. *Ercegovich*, 154 F.3d at 350. If the employer meets this burden, the burden of production shifts back to the employee to rebut the employer's proffered reason for her termination by proving that it was a pretext designed to mask discrimination. *Id.* At all times, the burden of persuasion remains with the plaintiff. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 378 (6th Cir.2002).

**A. ADEA Claim**

■ The district court determined that Succarde had met her burden of establishing a prima facie case of age discrimination, noting that the first three elements of her prima facie case were not disputed and that she had been replaced by Rosier, who was seventeen years younger than Succarde was at the time of her termination. FedEx Ground contends that Rosier did not "replace" Succarde because her responsibilities were redistributed among remaining employees already performing related work. We find it unnecessary to address this issue because we agree with the district court that FedEx Ground has articulated a legitimate, non-discriminatory reason for Succarde's termination and that she has failed to rebut that reason with evidence of pretext.

FedEx Ground states that Succarde's employment was terminated due to her poor performance as a national account executive, including her failure to develop appropriate client contacts, to develop new business, to meet her quota on a regular basis, and to make efforts to bring in sales. As the district court noted, this rationale is supported by ample evidence in the record.

Because FedEx Ground has articulated a legitimate, non-discriminatory reason for Succarde's termination, the burden shifts back to her to show that this reason is a pretext for age discrimination. A plaintiff can establish pretext " 'by showing that the employer's proffered explanation is unworthy of credence.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). This can be accomplished by demonstrating that (1) the proffered reason has no basis in fact; (2) the reason did not actually motivate the discharge; or (3) the reason was insufficient to motivate the

discharge. *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir.2003).

Succarde advances several arguments in support of her contention that FedEx Ground's non-discriminatory reason for her termination was a pretext for discrimination. She argues first that FedEx Ground's quota-based justification lacks merit because younger employees failed to meet their quotas and were not terminated. In particular, plaintiff points to Deanna Nelson and Tim Taylor as examples of employees who were under quota but were nevertheless retained. The performance summary shows that Nelson achieved 107%, 135.8%, and 75.9% of her quota in 1998, 1999, and 2000, respectively. Taylor achieved 86.9% of his quota in 1999 and 84% in 2000. Succarde achieved 87.1% of her quota in 1999 and 82.2% in 2000. In 1999 and 2000, Nelson and Taylor both had larger quotas than Succarde. In fact, Taylor's quota for fiscal year 1999 was more than twice the size of Succarde's. Despite this disparity, Taylor reached his quota three times in the last five years and Nelson met her quota in four out of the last five years. By contrast, Succarde never met her fiscal year quota after she became a national account executive. Her own testimony indicates that her supervisors constantly reminded her of the importance of meeting her quota. This evidence simply does not suggest that FedEx Ground's proffered explanation for Succarde's termination is unworthy of credence.

Succarde's remaining contentions also fail to support a finding of pretext. She argues that the factual basis for FedEx Ground's proffered reason is undercut by Jones's repeated decisions to increase her quota because the increases allegedly ensured she would not meet her goals. However, she has offered no evidence in support of her claim that Jones increased her quota because he wanted her to fail or that Jones did not increase the quotas of other employees. In fiscal year 1999, Succarde had the second lowest quota in her entire group. In 2000, six out of the twelve employees reporting to Jones had higher quotas than Succarde. In spite of her admitted failure to meet her quotas as a national account executive, Succarde argues that a jury could reasonably infer that her performance was adequate because she had been promoted just two years earlier. The fact that Succarde was promoted is irrelevant to establishing pretext, however, because it was only after she was promoted to national account executive that she failed so consistently to meet her quotas.

In sum, Succarde has not met her burden of showing that FedEx Ground's legitimate, non-discriminatory reason for her termination was a pretext for discrimination. The district court did not err in granting summary judgment in favor of FedEx Ground on this claim.

## B.  Elliot–Larsen Act Claim

■ Succarde devotes two paragraphs of her 31–page brief to her argument that the district court erred in granting summary judgment in favor of FedEx Ground on her gender discrimination claim. As with her age discrimination claim, the court concluded that Succarde had met her burden of establishing a prima facie case of gender discrimination because she was replaced by Rosier, but that her claim nevertheless failed because she could not establish pretext. For the reasons noted above, the district court did not err in reaching this conclusion.

### III.

For the foregoing reasons, we affirm the judgment of the district court.