Catherine **PETZEL**, Plaintiff–Appellant,

v.

**REDFLEX TRAFFIC SYSTEMS, INC.** et al., Defendants–Appellees.

No. 15–3671.

United States Court of Appeals, Sixth Circuit.

March 16, 2016.

BEFORE: GRIFFIN and STRANCH, Circuit Judges; GWIN, District Judge.[1]

## OPINION

JAMES S. GWIN, District Judge.

Plaintiff–Appellant Catherine Petzel sued Defendants–Appellees Redflex Traffic Systems, Inc. et al. ("Redflex"). She claims that Redflex fired her in violation of Title VII. Petzel claims that Redflex discriminated against her because of her gender and national origin, Australian. The district court gave summary judgment to Redflex because Petzel did not rebut Redflex's nondiscriminatory explanation for Petzel's termination. For the reasons below, we AFFIRM the district court's grant of summary judgment.

## I. INTRODUCTION

Plaintiff Catherine Petzel alleges that Defendant Redflex discriminated against her because of her gender and because she is an Australian. Petzel does not show evidence or make argument on the nationality claim. In support of her gender discrimination claim, Petzel says Redflex treated a similarly situated male, Darren Kolack, differently. In response to Petzel's circumstantial evidence argument re-

1. The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

garding Darren Kolack, Redflex says it separated men with sales records similar to Petzel and says Kolack was not similarly situated to Petzel.[2]

Redflex says it put salesperson Petzel on an improvement plan because she made only three sales in the three years before fall 2011. Because she had not made any 2011 sales and because Petzel failed to satisfy a sales quota that Redflex gave to all its salespersons, Redflex gave Petzel a Performance Improvement Plan ("PIP"). Redflex fired Petzel when she did not satisfy that plan.

Petzel admits that she did not satisfy the sales quota given to all Redflex salespeople. She also admits she did not satisfy the Performance Improvement Plan, but says Redflex did not fire a similarly situated American male employee, Darren Kolack. Like Petzel, Kolack failed to satisfy the Redflex sales quota and was also on a PIP.

Redflex responds that it has treated male salesmen similar to Petzel, but Kolack was not similarly situated to Petzel. First, Kolack had a better sales history than Petzel over the course of their careers at Redflex. Redflex also says that it had stopped selling to two of the three states that Kolack covered because its product had become politically impossible in those states. Second, during the PIP period, Redflex had given Kolack development responsibilities for a new product. Plaintiff Petzel had no similar responsibility.

2. Redflex is a subsidiary corporation of Redflex Holdings Limited, a publicly traded company on the Australian stock exchange.

3. Petzel Depo. RE 48–1, PageID# 766.

4. Petzel Depo. RE 47–3, PageID# 441, 444.

## II. FACTUAL BACKGROUND

Redflex hired Petzel as a Regional Sales Manager in early 2009.[3] Redflex sells electronic traffic monitoring devices that allow cities to ticket vehicles without police officers being present. The devices generate significant revenue and are often politically unpopular.

As a Redflex salesperson, Petzel covered Ohio and later covered Iowa. Regional Sales Director Mark Etzbach directly supervised Petzel. Vice President of Sales, Aaron Rosenberg, indirectly supervised Petzel.[4] Karen Finley was CEO and signed off on Redflex's decision to fire Petzel. During her time with Redflex, Petzel was either the lone woman, or one of just two women, in the Redflex salesforce.[5]

Petzel had little sales success. In the three years before 2011, Petzel executed only three sales contracts.[6] While Redflex did not originally have any formal sales requirements, it generally expected its Sales Employees to execute at least three contracts per year.[7] As described, before the new policy, Petzel had made only three sales in more than two years. On July 14, 2011, Sales Vice President Rosenberg sent sales employees an email that gave new minimum sales requirements. At the time Rosenberg established this new sales quota, the Redflex salesforce included Sales Manager Etzbach, Darren Kolack, Charlie Buckels, Peter McNerney, and Petzel.

With this policy, Redflex formally established a sales quota requiring one to two new executed contracts per quarter, with an absolute minimum of four contracts per

5. Finley Depo. RE 51–1, PageID# 947.

6. Petzel Depo. RE 47–3, PageID# 441.

7. Finley Depo., RE 48–1, Page ID# 821; Buckels Dec., RE 48–1, PageID# 737.

fiscal year.[8] Rosenberg also told the salesforce that a failure to deliver would "be swiftly dealt with (including up to immediate termination.)."[9]

After announcing this formal sales quota, Redflex continued to warn Petzel that it would enforce this quota. Redflex used a June 30 fiscal year. Petzel achieved no fully executed contracts during the FY 2012 first quarter that ended on September 30, 2011.

On August 29, 2011, Vice–President Rosenberg again warned Petzel saying, "if by October 1, (end of Q1), your efforts do not produce at least one ... fully executed contract in Youngstown or Norwalk and/or an 'official' and formal contract award/selection in Waterloo; your position will be terminated."[10]

On August 30, 2011, Rosenberg again warned Petzel of the sales requirements, telling her that if she did not get an executed contract in Youngstown/Norwalk or an official contract in Waterloo, "your employment will be terminated."[11]

In September 2011, Petzel helped with a sales effort for Montgomery, Texas. Sales Agent Etzbach had principal responsibility for Montgomery, but Etzbach asked for Petzel's help because of scheduling conflicts.[12] The City of Montgomery had only about 600 residents.[13] The City of Montgomery told Redflex it would proceed to contract with Redflex in the near future. But because mayors or managers typically needed city council approvals, Montgomery's commitment was not a completed contract.

Although Petzel failed to satisfy the FY 2012 first quarter sales quota, on September 27, 2011, Sales Director Etzbach recommended to Vice–President Rosenberg that Petzel "be granted an extension through Q2, or December 31st, at which time if she is unsuccessful in bringing an additional contract to pass, that her employment be terminated."[14] Sales Director Etzbach argued that Montgomery, Texas's expression of an intent to enter a contract should be considered as a mitigating factor against termination, but that there will "be no room for error over the next three months if she is granted an extension."[15]

Vice–President Rosenberg gave Petzel the ninety-day extension to meet the quota, thereby extending her improvement period to December 31, 2011. Redflex also put Petzel on a formal Performance Improvement Plan.

Two males, Charlie Buckels and Darren Kolack, who had also not executed a contract in the July 2011–October 2011 period, were also placed on a FY 2012 Q2 Performance Improvement Plan.[16] Each PIP

**8.** Vice President Rosenberg wrote, "4 ... [is] [t]he absolute minimum # of new executed contracts per existing sales executive, including Mark, Catherine, Darren, Peter, and Charlie. This does not mean 4 in Q3 or Q4, each of you will need to drive to 1–2 new executed contracts per quarter, starting Q1." Rosenberg email RE 51–10, PageID# 1045–47.

**9.** *Id.*

**10.** Rosenberg Aug. 29 2011 email to Petzel RE 51–4, PageID# 1028.

**11.** Rosenberg Aug. 30, 2011 email to Petzel, RE 47–4, PageID# 519.

**12.** Petzel Depo., RE 48–1, Page ID# 774; Finley Dep. Ex. 6, RE 48–1, Page ID# 830–31.

**13.** Finley Depo. Ex.6, RE 48–1, Page ID# 830.

**14.** Finley Depo. Ex. 17, RE 48–1, Page ID# 851.

**15.** *Id.*

**16.** Petzel Depo., RE 481–1, Page ID# 781; Petzel Depo. Ex. M, RE 48–1, Page ID# 804–05.

warned that the Sales Employee would be terminated if he or she failed to execute two contracts by December 31, 2011, the end of the FY 2012 second quarter.

During the FY 2012 second quarter, Petzel failed to obtain any executed contracts, official contract awards, or commitments.[17] During the same period, Charlie Buckels obtained two contracts, thereby satisfying the PIP requirement.[18] Darren Kolack did not obtain any executed contracts in the FY 2012 second quarter ending December 31, 2011, but did receive official contract awards with two cities in his territory: Miami, Arizona and Nogales, Arizona.[19] Although Darren Kolack obtained these contract commitments, the Miami City Council later overturned the Mayor's agreement to use the Redflex camera systems. And, Redflex itself terminated the Nogales contract because of operational challenges in the Arizona market.[20]

Petzel says Darren Kolack was similarly situated to her, but was not fired. Redflex responds that Kolack was not similarly situated to Petzel. In the first half of FY 2012, Redflex had decided not to seek contracts in Arizona and New Mexico, two of the three states that Kolack covered.[21] In effect, Redflex cut Kolack's sales prospects by two-thirds.

Also, during the first half of FY 2012, Redflex directed Kolack to lead a new product development called Student Guardian. Student Guardian was a new Redflex technology to monitor and identify drivers who illegally pass school buses.[22] In the first half of FY 2012, Kolack split his time between sales and Student Guardian development.

In December 2011, Rosenberg transferred Darren Kolack to a position supporting the Student Guardian project on a full-time basis.[23] On January 1, 2012, Kolack's position changed from Regional Sales Manager to National Business Development Manager for Student Guardian.[24]

On December 1, 2011, Vice-President Rosenberg sent an email to Etzbach and Finley recommending Petzel's employment be terminated at the end of 2011 because even her "most advanced pursuits and contracts in negotiation cycles have reversed course."[25] Rosenberg asked for Sales Manager Etzbach's input as to whether Petzel should be terminated since Etzbach was Petzel's direct supervisor. Etzbach responded that he agreed with Rosenberg's recommendation to fire Petzel.[26]

Rosenberg emailed Petzel a final warning:

[As] you know, we only have until December 31st to get some deals across the line. Specifically, each Sales resource is required to deliver a minimum of 2 executed contracts over each 6-month period.... [You] have not executed the re-

---

17. *Petzel Depo.*, RE 48–1, Page ID# 783–84.

18. Buckels Dec., RE 48–1, Page ID# 737.

19. Kolack Dec., RE 48–1, Page ID# 723–24, 730–31.

20. *Id.*

21. *Id.*

22. Kolack Dec., RE 48–1, Page ID# 722; Finley Depo., RE 48–1, Page ID# 824.

23. Kolack Dec., RE 48–1, Page ID# 724; Kolack Dec. Ex. C, RE 48–1, Page ID# 730–731; Finley Dep. 97, RE 48–1, Page ID# 826.

24. *Id.*

25. Rosenberg email Dec. 1, 2011, RE 51–16 PageID# 1072.

26. *Id.* at PageID# 1071.

quired two contracts nor received formal awards ... [I]f your performance doesn't improve over the next several weeks and if we are not able to execute two contracts or have formal competitive awards with Council ratification to commence negotiations with Redflex; we will need to terminate you effective December 31st.[27]

Petzel did not execute two contracts by December 31, 2011. She did not obtain any new contracts in FY 2012's second quarter. Redflex terminated Petzel's employment effective December 31, 2011.[28] After Petzel's termination, Redflex assigned Robert Riebe, an American male, as the Regional Sales Director for the Ohio region.[29]

## III. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo.[30] Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[31] In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.[32] The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." [33]

## IV. DISCUSSION

### A. Prima Facie Case

To make out a Title VII claim, "a plaintiff must either provide direct evidence of discrimination or establish a *prima facie* case, which creates an inference of discrimination based on circumstantial evidence." [34] If the plaintiff can establish a prima facie case, the burden shifts to the defendant, who must offer a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant makes that proffer, then the burden returns to the plaintiff, who must present evidence that the proffered reason is a mere pretext for discrimination.

A *prima facie* case requires a plaintiff to present evidence that: (1) she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was professionally qualified for the position she held at the time of the action; and (4) that she was either replaced by a person from outside the protected class or was treated differently from similarly situated employees outside the protected class.[35]

The District Court found that Petzel made the *prima facie* showing.[36] In its

27. Rosenberg email Dec. 1, 2011, RE 47–4, PageID# 529–530.

28. Separation Notification, RE 47–4, PageID# 536.

29. First Set of Discovery Responses; R.E. 51–26 PageID# 1410.

30. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000) (en banc).

31. Fed.R.Civ.P. 56(c).

32. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

33. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

34. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir.2003).

35. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 607, 610 (6th Cir.2002).

36. As a woman and as a person of foreign national origin, Petzel is a member of a protected class. Petzel was qualified for the position. She was terminated, which is an adverse employment decision. Finally, Petzel was replaced by an American male.

summary judgment reply briefing, Redflex conceded that Petzel met her prima facie burden.[37] For these reasons, we find that Petzel met her prima facie burden and focus our inquiry on the pretext question.

## B. Pretext

To establish pretext in an employment discrimination case, a plaintiff must demonstrate that: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the employer's challenged conduct; or (3) the proffered reasons were insufficient to justify the adverse action.[38] Although these three methods for establishing pretext can serve as a "convenient way of marshaling evidence and focusing it on the ultimate inquiry ... at bottom the question is always whether the employer made up its stated reason to conceal intentional [discrimination]."[39]

■ Here, Redflex has articulated a valid nondiscriminatory rationale for Petzel's termination: Petzel's failure to meet Redflex's sales goals and Petzel's failure to satisfy the terms of her PIP. Petzel offers a number of arguments as to why Redflex's nondiscriminatory rationale is pretextual. Most of Petzel's pretext arguments center on her claim that Redflex treated a similarly situated man, Darren Kolack, differently. We address that argument first.

## 1. Kolack and Petzel Were Not Similarly Situated Employees.

We previously have decided that the standard for judging comparable employees should be consistent throughout each stage of the McDonnell Douglas–Burdine analysis.[40] This Court looks at whether proposed comparators are "similarly situated employees" within the meaning of the Mitchell–Ercegovich line of cases.[41]

In order to be similarly situated, employees must be similar in "all relevant respects."[42] The plaintiff need not demonstrate an exact correlation with the employee who received more favorable treatment. However, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."[43] To be deemed similarly situated, the individual with whom the plaintiff seeks to compare her treatment must have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.[44]

■ Kolack worked under "differentiating or mitigating circumstances that ... distinguish [Kolack's] conduct"[45] and distinguished Redflex's treatment of Kolack's employment. First, Kolack had a significantly better sales history coming into the PIP. In roughly three years, Petzel had

---

37. Summary judgment reply brief, RE 55, PageID# 1481 n. 2.

38. *Risch v. Royal Oak Police Dep't,* 581 F.3d 383, 391 (6th Cir.2009).

39. *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 530 (6th Cir.2012).

40. *White v. Duke Energy–Kentucky, Inc.,* 603 Fed.Appx. 442, 447 (6th Cir.2015).

41. *Id.*

42. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998).

43. *Id.*

44. *Hollins v. Atl. Co.,* 188 F.3d 652, 659 (6th Cir.1999)(internal citation omitted).

45. *Id.*

executed three relatively small contracts; Kolack had executed eleven contracts in the same period.[46]

Second, Redflex stopped selling to two of the three states in Kolack's sales territory because of operational and political challenges in Arizona and New Mexico. Petzel had no comparable sales territory loss during her PIP.

Third, Darren Kolack secured two official contract awards during his PIP. However, both contracts were terminated due to factors outside of Kolack's control before the contracts could proceed to completed sales. In contrast, Petzel secured no contract awards in the FY 2012 second quarter, ending December 31, 2011.[47]

Fourth and most importantly, during the PIP period, Redflex gave Darren Kolack responsibility for the development and implementation of Student Guardian, a new product for Redflex. Petzel was not involved in Student Guardian or any other Redflex development product.

At argument, Petzel argued that both Petzel and Kolack failed to meet their respective PIP plans and that these failures made them similarly situated irrespective of any other differences. But while *Ercegovich* held that comparators need not be identical, the Court in *Ercegovich* explained that *Mitchell* does not require "a comparison between the employment status of the plaintiff and other employees in every single aspect of their

employment." [48] *Ercegovich* instructed that plaintiffs are "required to prove that all of the relevant aspects of his employment were 'nearly identical' to those of the non-minority's employment situation." [49]

Each of the Kolack and Petzel differences are "differentiating or mitigating circumstances that would distinguish [the employees'] conduct or the employer's treatment of them for it." [50] Kolack came to the PIP with more than three times Petzel's sales history. Kolack received two contract expressions during the PIP even though they did not result in contracts for other reasons. Kolack's sales territory had been reduced by two-thirds. And finally, during the PIP, Redflex had assigned Kolack significant and time-consuming responsibilities for Student Guardian.

Because of these differences, Kolack and Petzel were not similarly situated employees for the purpose of showing that Redflex's explanation for terminating Petzel was pretextual.

### 2. Kolack's Testimony Is Not Enough To Prove Pretext.

Petzel alternatively argues that Kolack's deposition testimony sufficiently shows pretext. Kolack testified:

Q. So what Mr. Rosenberg conveyed to you about why you were not being ter-

---

**46.** Kolack Dec. Exs. A, C, RE 48–1, PageID# 726, 730–31; Kolack Dec., 48–1, Page ID# 723.

**47.** Petzel argues that she obtained a contract award for Montgomery, Texas in the FY 2012 first quarter. The Montgomery contract involved a town with only 600 residents, far smaller than towns Redflex usually sold to. The Montgomery expression of intent to enter a contract never resulted in an actual contract. Perhaps more important, Petzel's PIP

required one contract per quarter. Even if Petzel receives credit for the Montgomery, Texas contract, she had no other contracts in the FY 2012 first two quarters of FY 2012.

**48.** *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998).

**49.** *Id.*

**50.** *Id.*

minated was because you had met your plan objectives?

A. Correct.[51]

Apparently, Petzel argues that Supervisor Rosenberg had adjusted Kolack's PIP sales requirement but had not adjusted Petzel's PIP sales requirements. As earlier described, Darren Kolack had secured two official contract awards in his sales territory during the PIP. Those contracts did not complete for reasons beyond Kolack's control.

This deposition statement does not give rise to a genuine dispute of material fact with respect to pretext. First, Redflex had directed Darren Kolack to spend significant time on the Student Guardian project in the FY 2012 second quarter ending December 31, 2011. The Business Development Transfer Plan that Rosenberg drafted and that Darren Kolack signed explained that Redflex gave Kolack responsibility for Student Guardian because Kolack had specialized skills and knowledge for the Student Guardian position. Kolack's transfer plan also explained that Kolack had a proven track record in securing awards and executing contracts for Redflex.

The transfer plan acknowledged Kolack's failure to fully succeed in the PIP as "partially reflective of Redflex's position not to actively pursue business in specific markets, including Arizona, which is Darren [Kolack]'s primary market."[52] Each of these contemporaneous statements is consistent with Redflex's reasons why Kolack was not similarly situated to Petzel in December 2011. Rosenberg told Kolack that he wanted Kolack "to focus on Student Guardian full-time."[53]

Second, in a contemporaneous email with Redflex's former HR Director, Sandra Stevens, Sales Vice–President Rosenberg explained the decision to continue Kolack's Student Guardian assignment:

Obviously, this transfer is not being offered to Darren as a "deal", Darren has been focused (consumed) on this effort since June and it has consumed his time and focus. As an organization, during Q1, we determined this is becoming a corporate priority, as such, Darren is the most knowledge [sic] person in this vertical and has lead all efforts in this solutions' overall development.[54]

The evidence shows that Redflex kept Darren Kolack because he had some contracts success, because Redflex had diminished Kolack's sales potential when it withdrew from major states that Kolack covered, and because Kolack had been directed to supervise the Student Guardian project, an important project. Thus, Kolack's testimony, about a conversation Kolack vaguely recalled, is merely a scintilla of evidence, insufficient to defeat summary judgment.

### 3. Redflex Did Not Offer "Shifting Rationales."

Petzel argues that Redflex has offered "shifting" rationales for Petzel's termination. Petzel points to then Redflex CEO Karen Finley's deposition where Finley testified that Petzel's failure to meet the terms of her PIP was the "only" reason Petzel was fired. Petzel then argues that in discovery responses Redflex also identified Petzel's consistent failure to meet sales goals throughout her employ-

51. Kolack Depo., R.E. 51–25, PageID# 1395.

52. Kolack Dec. Ex. C, RE 48–1, PageID# 730–31.

53. Kolack Dec., RE 48–1, PageID# 724.

54. Petzel Dec. Ex. 1, RE 51–29, PageID# 1431–32.

ment.[55] Redflex also noted that Petzel had not been involved in Student Guardian efforts.

Although Petzel's low earlier sales led to the PIP, Petzel says it is a different justification from Redflex's explanation that Redflex fired Petzel for failing the PIP.

These additional reasons for Petzel's termination do not establish pretext. They are background to the decision to fire Petzel for failing to satisfy the PIP. Both are part of the same justification: Redflex fired Petzel because she made almost no sales. With regard to its comment on Petzel's non-involvement with the Student Guardian project, Redflex noted the additional reasons to explain why Redflex did not terminate Kolack's employment, not to explain why Redflex terminated Petzel's employment.

### 4. Sales Manager Etzbach's Statements To Petzel Do Not Constitute Evidence Of Pretext.

Sales Manager Etzbach was Petzel's direct supervisor and was consulted on the decision to terminate Petzel. Etzbach agreed that Petzel should be terminated. Sales Manager Rosenberg and CEO Karen Finley made the decision to fire Petzel.

Plaintiff Petzel testified that in a telephone call, Etzbach told her that he thought Petzel was being discriminated against and that she should get a lawyer and file a lawsuit.[56] Petzel further testified that Etzbach told her that he had a "feeling" that she was "unfairly targeted" by Rosenberg.[57] Petzel does not produce any additional evidence proving that Etzbach made these statements or what Etz-

bach's "feeling" about Rosenberg was based upon.

Etzbach testified that "throughout [Etzbach's] employment with Redflex, [he] did not witness any derogatory remarks by Rosenberg regarding Petzel's gender or national origin."[58]

■ Petzel's testimony about her conversation with Etzbach is not admissible evidence. While Etzbach is competent to testify regarding his own recommendation that Petzel be fired, Petzel has not sufficiently alleged that Etzbach had the requisite personal knowledge to be competent to testify regarding what motivated Karen Finley and Rosenberg to fire Petzel.

Petzel's testimony about her conversation with Etzbach is therefore not sufficient to reject Redflex's proffered reason for terminating her employment.

### 5. It Is Unnecessary To Consider The Probationary Periods Of Other Non–Australian Men.

Redflex offered evidence that between 2010 and 2012, it fired four male employees for failing to satisfy sales quotas. Petzel also argues that the district court erred in considering the probationary period or PIPs of other non-Australian male sales employees as evidence rebutting Petzel's claim of pretext. The District Court found that Sales Vice–President Rosenberg placed four non-Australian male employees on probationary periods or PIPs between 2010–2012 and that they were each either fired or forced to resign for not meeting the terms of their PIPs. Petzel argues that none of those employees were similarly situated to her. Because we have found that Kolack was not similarly situated to

---

**55.** First Set of Discovery Responses RE 51–26, PageID# 1407.

**56.** Petzel Depo. RE 51–24, PageID# 1229–31.

**57.** *Id.*

**58.** Etzbach Dec., RE 48–1, PageID# 810.

Petzel, we do not reach the question of whether the other employees were similarly situated. Petzel has failed to satisfy her burden at the pretext stage.

## V. CONCLUSION

For the foregoing reasons, this Court AFFIRMS the district court's decision.