NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0286n.06

No. 16-5381

**FILED**
May 22, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JEAN F. SIMPSON, M.D., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| VANDERBILT UNIVERSITY, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     BATCHELDER, STRANCH, and DONALD, Circuit Judges.

**ALICE M. BATCHELDER**, **Circuit Judge.**   While employed as a professor by the Vanderbilt University ("Appellee"), as part of the Vanderbilt University School of Medicine and the Vanderbilt Medical Group ("VMG"), Appellant Jean Simpson started, ran, and solicited clients for her own private business.  Vanderbilt considered such actions to be a violation of Vanderbilt's Conflict of Interest Policy, VMG's By-Laws, and VMG's Participation Agreement (to which Simpson was bound).  After attempting to resolve the matter with Dr. Simpson, and receiving very little cooperation, Vanderbilt terminated Dr. Simpson's employment.  Dr. Simpson filed suit against Vanderbilt, alleging, in part, that she was terminated, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 through -17, and the Tennessee Human Rights Act, Tenn. Code. Ann. § 4-21-101 through -1004, because of her gender.  This is an appeal from the district court's order granting Vanderbilt's motion for summary judgment on

the issue of gender discrimination. Because the district court properly found that Dr. Simpson failed to identify a suitable male comparator, and failed to make out a prima facie case of discrimination, we affirm the district court's summary judgment order.

**I.**

Dr. Simpson worked for Vanderbilt from 1997 until her termination on October 24, 2013. During her employment, Dr. Simpson signed a Participation Agreement with VMG and understood that she was subject to the VMG By-Laws and Vanderbilt's Conflict of Interest Policy. At the time of her termination, Dr. Simpson held a full-time faculty appointment as a professor in the Division of Anatomic Pathology. The Pathology Division formerly included a dedicated breast-pathology consult service (the "Page Breast Service"), in which Dr. Simpson participated. Vanderbilt eliminated the Page Breast Service in July 2012, and general surgical pathology took over the practice.

While the Pathology Division reorganization was still pending, Dr. Simpson began her own company, "Breast Pathology Consultants, Inc." ("BPC"). BPC is a dedicated breast-pathology consult practice that differs little from Vanderbilt's Page Breast Service. Beginning in early 2012, Dr. Simpson began calling pathologists for whom she had previously provided consultations on breast-cancer cases, and sending letters to several hundred pathologists, some of whom had submitted consult cases to the Page Breast Service. Through her calls and letters, Dr. Simpson informed the referral sources of the pending reorganization and offered her diagnostic services, through BPC, as an alternative. Dr. Simpson remained a Vanderbilt employee after starting her company and continued to work in the Pathology Division. Dr. Simpson provided services through BPC throughout the remainder of her time at Vanderbilt and, between February 2012 and October 2013, she collected a total of $244,146.84 in fees through BPC.

Dr. Simpson did not ask permission of Vanderbilt to begin her company, and she did not discuss her new company with anyone at Vanderbilt. Dr. Simpson further did not disclose her work with BPC on her 2012 Conflict of Interest form. In summer 2012, however, Vanderbilt learned that Dr. Simpson was engaging in pathology services through BPC. Throughout the next year, Vanderbilt informed Dr. Simpson on three separate occasions that such activity violated Vanderbilt's Conflict of Interest Policy, the VMG By-Laws, and the VMG Participation Agreement, and that she needed to cease her work through BPC or face potential disciplinary action. On October 15, 2012, Dr. Simpson filed a revised Conflict of Interest disclosure, noting her work with BPC. However, Dr. Simpson otherwise denied that her activities competed with Vanderbilt, and she argued that she had several male colleagues who had engaged in similar activity and were allowed to maintain an outside practice.

In July 2013, The Dean of the School of Medicine appointed a faculty committee to investigate the allegations against Dr. Simpson. Dr. Simpson submitted a written statement to the committee, but declined the committee's request to meet as part of its investigation. The investigative committee concluded its investigation and reported its findings on September 16, 2013, stating:

> The Committee finds that Dr. Simpson's violations of the Vanderbilt University Conflict of Interest and Commitment policy, the VMG By-laws, and the VMG Provider Agreement, and her actions subsequent to that notification constitute neglect of duty. We believe this is a serious violation and warrants termination for cause and surrender of funds accrued from this outside business, Breast Pathology Consultants, Inc. (breastconsults.com). We arrived at this conclusion based on careful consideration of evidence reviewed and interpretation of the VMG By-laws and VMG Provider Agreement.

The parties then, through their counsel, engaged in productive, but ultimately unsuccessful, settlement communications. Dr. Simpson was offered the option to resign in lieu

of termination, conditioned on her payment to Vanderbilt of certain funds received through BPC. Dr. Simpson ultimately rejected this offer as unreasonable, and she was terminated for cause.

Dr. Simpson then filed a complaint against Vanderbilt in the United States District Court for the Middle District of Tennessee, alleging that Vanderbilt violated Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act when it terminated her employment on the basis of gender discrimination and retaliation. Dr. Simpson, and Vanderbilt via counter-claim, also asserted state-law breach of contract claims against each other. Vanderbilt denied all of Dr. Simpson's claims and filed a Motion for Summary Judgment as to the claims for discrimination and retaliation, which the district court granted. The court declined to exercise jurisdiction over the state-law breach of contract claims. Dr. Simpson timely appealed the judgment on the gender discrimination claim.[1]

## II.

"We review *de novo* the grant of summary judgment by a district court." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 236 (6th Cir. 2015). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence, and any inferences to be drawn from such evidence, "in the light most favorable to the [nonmoving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). However, if the "nonmoving party has failed to make a sufficient showing on an essential element of [the] case with respect to which

---

[1] Dr. Simpson does not appeal the dismissal of her retaliation claim. Additionally, while Dr. Simpson's opening brief mentions her state-law breach of contract claim, she does not present argument as to how the district court erred by dismissing without prejudice that claim. Therefore, we do not address the claim further. *See Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 602 (6th Cir. 2014 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).

she has the burden of proof," the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The district court held that Dr. Simpson failed to present a prima facie case of gender discrimination for her termination. The district court further held that, even if Dr. Simpson had presented a prima facie case, Vanderbilt articulated a legitimate, nondiscriminatory reason for her termination, and Simpson failed to demonstrate that the stated reason was pretext for discrimination. As the district court properly determined that Simpson failed to present a prima facie case of gender discrimination, we need not address the issue of pretext.

Under the familiar *McDonnell Douglas* burden-shifting framework for discrimination claims, a Title VII plaintiff must first make out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To establish a prima facie case of sex discrimination, a plaintiff must demonstrate that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) . . . similarly situated non-protected employees were treated more favorably." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

To demonstrate that an individual is a "similarly situated" comparator, a plaintiff is simply "required to prove that all of the *relevant* aspects of [her] employment situation were 'nearly identical' to those of [the male employees'] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). For example, "similarly situated" in the disciplinary context means that, "the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same

standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). However, "the weight to be given to each factor can vary depending upon the particular case." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) (citing *Ercegovich*, 154 F.3d at 352). "Courts should not assume . . . that the[se] specific factors . . . are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352.

**III.**

The parties do not dispute that Dr. Simpson satisfied the first three elements of her prima facie case. Dr. Simpson argues, however, that a genuine dispute of material fact exists as to the fourth element and whether the various male Vanderbilt employees she identified were sufficiently similar to her to serve as comparators. On appeal, Dr. Simpson highlights Dr. Peter Donofrio, a Neurologist who engaged in consulting via the "Best Doctors" website, as her best example of a comparator. Contrary to Dr. Simpson's assertion, Dr. Donofrio simply is not a suitable comparator because of key differences between his and Dr. Simpson's conduct. Thus, as the district court determined, none of the other male Vanderbilt employees identified (who are even less similar to Dr. Simpson than Dr. Donofrio) serves as a similarly situated comparator.

Dr. Donofrio served as an online consultant for the "Best Doctors" website, and disclosed his consultant work to Vanderbilt on his 2011 Conflict of Interest form. Following Dr. Donofrio's disclosure, Vanderbilt instructed him to cease his engagement with Best Doctors, and Dr. Donofrio initially complied. Dr. Donofrio, however, resumed his work with Best Doctors in

2012. During the course of discovery in this case, Vanderbilt learned that Dr. Donofrio had resumed his work with Best Doctors and instituted disciplinary review against him. During the course of his disciplinary review, Dr. Donofrio agreed to discontinue his work with Best Doctors and to repay $122,000 in fees that he had received from that work.[2] Dr. Donofrio was not terminated for his conduct, but he received a reprimand in his faculty file and a two-year probation.

While both Dr. Donofrio and Dr. Simpson were subject to Vanderbilt's Conflict of Interest Policy, the VMG By-Laws, and the VMG Participation Agreement, the differences between Dr. Donofrio and Dr. Simpson in this instance are clear. Unlike Dr. Simpson, Dr. Donofrio disclosed his activity on his Conflict of Interest form before Vanderbilt alerted him to the potential conflict. Dr. Donofrio ceased his work with Best Doctors both times that he was informed that his conduct violated Vanderbilt policy. In contrast to Dr. Simpson, Dr. Donofrio cooperated with the review committee's investigation and accepted responsibility for violating Vanderbilt policy, agreeing to cease his work with Best Doctors and pay Vanderbilt all fees earned from Best Doctors that Vanderbilt could reasonably claim. Additionally, Dr. Donofrio's work with an established consulting website is less egregious than Dr. Simpson's creation, management, and solicitation of former Vanderbilt consult clients for her own independent business.

Dr. Simpson identifies additional purported comparators—male physicians who earned income from consulting websites but were not similarly disciplined by Vanderbilt or who were

---

[2] Dr. Simpson argues on appeal that Dr. Donofrio was treated more favorably because he was only required to pay $122,000 of the fees earned through Best Doctors, rather than $136,267.00, the total amount of fees earned. Dr. Simpson's reliance on this $14,267 difference is fruitless. Vanderbilt did not require Dr. Donofrio to pay his full earnings because $14,267 of these earnings was received prior to the six-year timeframe in which Vanderbilt believed it could reasonably enforce payment through a breach of contract action. Vanderbilt's actions do not show unfair treatment, but rather recognition of what discipline it might reasonably impose on Dr. Donofrio.

allowed to earn outside income as they transitioned to private practice or retirement (as Dr. Simpson claims she asked to do)—who are even less similar. As to the male physicians who engaged in online consulting, unlike Dr. Simpson, they ceased their consulting work when directed to do so and paid Vanderbilt the fees earned from such work. Further, the male physicians earning fees while transitioning to private practice or retirement received permission to do so from the VMG Executive Committee; Dr. Simpson neither sought nor obtained such approval.

Dr. Simpson argues, nonetheless, that she was treated less favorably than various male employees who were disciplined because they were eligible to get back a significant portion of remitted earnings but she was not given such an option. These payments, however, were provided due to compensation plans applicable to various divisions of the School of Medicine and VMG. As acknowledged during oral argument, however, the Pathology Division, rightly or wrongly, did not have a similar compensation plan in place. Thus, the availability of some reimbursement for certain employees but not others does not demonstrate that Dr. Simpson was treated less favorably. Instead, it further displays the significant differences between Dr. Simpson and the male comparators that she identified.

## IV.

Accordingly, we agree with the district court that no reasonable jury could find that "similarly situated non-protected employees were treated more favorably" than Dr. Simpson, and we AFFIRM the district court's order granting summary judgment.